**ESTATE OF Lee Roy HOSKINS, Sr., Deceased**

**NUMBER 13-15-00487-CV**

Court of Appeals of Texas, Corpus Christi–Edinburg.

Delivered and filed September 8, 2016

Melanie L. Fry, C. David Kinder, San Antonio, TX, for Appellants.

Kevin Philip Kennedy, Attorney at Law, Christopher Hodge, Joyce W. Moore, Langley & Banack, Royal B. Lea III, Bingham & Lea P.C., Glen A. Yale, Yale Law Firm, P.C., Ezra Johnson, Uhl, Fitzsimons, Jewett & Burton PLLC, David L. Ylitalo, Ylitalo Law Firm, Brendan Holm, David William Navarro, San Antonio, TX, David Charles Bakutis, R. Dyann McCully, Bakutis McCully & Sawyer PC, Fort Worth, TX, George Morrill III, Morrill & Morrill, PLLC, Beeville, TX, James J. Hartnett Jr., The Hartnett Law Firm, Dallas, TX, Audrey Mullert Vicknair, Law Office of Audrey Mullert Vicknair, Corpus Christi, TX, for Appellees.

Before Chief Justice Valdez and Justices Rodriguez and Garza

## OPINION

Opinion by Justice Rodriguez

This appeal involves the appointment of Marcus P. Rogers as receiver in a dispute over the estate of Lee Roy "Cowboy" Hoskins Sr. (Cowboy). Cowboy's will was probated in 1985. Thirty years later, many of Cowboy's family members are still involved in litigation to determine the fate of Cowboy's estate assets. In the present suit, appellees Rogers, Lee Roy Hoskins Jr., Lee Roy Hoskins III, Lee Ann Hoskins Kulka, Andrea Clare Jurica, Leonard K. Hoskins, Daniel Kenton Hoskins, and William Rex Hoskins all moved for the probate court to name Rogers as receiver for two trusts created by Cowboy's will.[1] Appellees asked the probate court to grant Rogers the authority to pursue the present lawsuit on behalf of the trusts. The probate court granted the motion in part, naming Rogers "receiver," but assigning him only the limited duty of creating a report on the current status of Cowboy's estate assets.

Appellants Clifton Hoskins and Hoskins, Inc.—whom we refer to collectively as "Cliff"[2]—raise three issues on appeal. By his first and second issues, Cliff contends that appellees offered no evidence which would justify the appointment of a receiver under the applicable law and that the probate court therefore abused its discretion by appointing any receiver. By a third issue, Cliff contends that the probate court erred by appointing Rogers in particular, alleging Rogers has bias which disqualifies him as a proper candidate. In response, appellees contend that this Court is without jurisdiction, because the probate court's order was not subject to an interlocutory appeal. In the alternative, appellees argue that the probate court based its order on a sufficient foundation of fact and selected an appropriate candidate, and therefore the court did not abuse its discretion. Because we agree with appellees' alternative contentions, we affirm.

### I. BACKGROUND

Cowboy died testate in 1985. According to his will, Cowboy created two trusts—the Marital Deduction Trust and the Residuary Trust. The will identified Cowboy's

---

1. Other appellees identified in this appeal include: Joe L. Carter Jr.; the Estate of Hazel Q. Hoskins; Blake Hoskins; Brent C. Hoskins; R. Dyann McCully; and George P. Morrill III.

2. For ease of reference, we assign Cliff masculine pronouns.

wife Hazel as the sole beneficiary of the Marital Deduction Trust. The will further identified Hazel, his three sons—Clifton, Leonard, and Lee Roy Jr.—and his seven grandchildren as beneficiaries of the Residuary Trust. Cowboy named Hazel as independent executor of his estate and as a trustee of each trust.[3]

It is undisputed that the family has been embroiled in litigation for decades. The lawsuits involve allegations that Hazel transferred several pieces of property from Cowboy's estate to Clifton, in violations of the trusts. In one such dispute, Leonard sued Clifton and Hazel. The dispute proceeded to arbitration, at the order of the United States Bankruptcy Court of the Southern District of Texas.[4] *See Hoskins v. Hoskins*, 497 S.W.3d 490, 491, No. 15–0046, 2016 WL 2993929, at *1 (Tex. May 20, 2016). The arbitrator awarded summary judgment in favor of Cliff on all of Leonard's claims, and the bankruptcy court confirmed the award. *Id.* at 492–93, 2016 WL 2993929, at *2.

Hazel, however, remained in the arbitration. The arbitrator appointed Rogers as receiver of the assets of the trusts pursuant to the Texas Property Code. *See* TEX. PROP. CODE ANN. § 114.008(a)(5) (West, Westlaw through 2015 R.S.). The arbitrator ordered Rogers to take "possession of all Trust Property and administer the Trust[s] pursuant to [their] terms," determine "whether Hazel Hoskins is capable of continuing as the Trustee," make "such other recommendations as he may deem appropriate," and deliver "a report to the Arbitrator no later than June 30, 2013."

Rogers filed his written report on June 28, 2013. On November 12, 2013, the arbitration was abated pending the outcome of the *Hoskins v. Hoskins* appeal. *See* 497 S.W.3d at 491, 2016 WL 2993929, at *1. The arbitrator later resigned.[5]

On October 9, 2013, Rex Hoskins, who is Leonard's son and Cowboy's grandson, initiated the present litigation in Live Oak County Probate Court. Rex took the position that under the terms of Cowboy's will, all of the estate was to go into the Residuary Trust for the benefit of Hazel for life, with discretionary distributions to go to the support of Cowboy's children and grandchildren. Upon Hazel's death, the remainder was to go to Cowboy's descendants, per stirpes. However, according to Rex, Hazel had instead transferred several valuable trust assets directly to herself or Clifton, to the exclusion of the other family-member beneficiaries of the trusts. Rex further alleged that Hazel had also never provided an accounting to the trust beneficiaries, as the terms of the will and the trusts required her to do. Rex sought to remove Hazel as executor of Cowboy's estate and as trustee of the trusts. Hazel filed pleas in opposition to Rex's petition, but the probate court denied Hazel's pleas in May 2014. Hazel resigned as independent executor and as trustee of each trust shortly thereafter.

Rogers had also joined the probate court suit in November 20, 2013. In his petition, Rogers identified himself as the receiver of the two trusts "by Order signed on April 16, 2013, by Thomas J. Smith, arbitrator." He requested confirmation of the arbitra-

---

**3.** Hazel and National Bank of Commerce were the two original trustees of the trusts according to the Will. National Bank of Commerce resigned as trustee shortly after Cowboy died. Hazel served as the sole trustee of each trust for approximately thirty years.

**4.** The bankruptcy court had authority to enter this arbitration order from its role presiding over previous Hoskins-family litigation.

**5.** We find nothing in the record regarding arbitration after the appeal in *Hoskins v. Hoskins*. 497 S.W.3d 490, 491, No. 15–0046, 2016 WL 2993929, at *1 (Tex. May 20, 2016).

tion order appointing him as receiver and authorization to take possession of estate and trust property and records. In the alternative, Rogers requested that the probate court appoint him as receiver pursuant to property code section 114.008. *See* TEX. PROP. CODE ANN. § 114.008. He also sought an accounting from Hazel of both trusts and the estate, pursuant to the property code and the estates code, or in the alternative, that he be tasked with developing a full accounting. *See id.* § 113.151 (West, Westlaw through 2015 R.S.); TEX. ESTATES CODE ANN. § 404.001 (West, Westlaw through 2015 R.S.). Hazel opposed Rogers's petition. The probate court held a hearing on July 3, 2014, at which it received documentary evidence and testimony from Rogers concerning Hazel's alleged breaches of trust.

Rather than confirming Rogers's appointment or independently appointing him, the probate court appointed Dyann McCully dependent administrator of Cowboy's estate on August 18, 2014. In October 2014, McCully filed a declaratory judgment action naming Rogers, Hazel, the successor trustees, and Cowboy's children, grandchildren, and their associated entities as respondents. McCully asked the probate court to declare whether the estate, the trusts, or any of the beneficiaries of the estate or trusts had any claims against one another and, if so, to identify those claims. Subsequently, the Live Oak County District Court appointed Joe Carter to serve as trustee of the Marital Deduction Trust and George Morrill III as Trustee of the Residuary Trust.[6]

Likewise, rather than ordering Rogers to perform an accounting, on August 1, 2014, the probate court ordered Hazel to file a complete accounting of the estate and each trust from April 1985 to the date of the accounting. The accounting for the trusts was to be "delivered to Marcus Rogers, Receiver," along with all other parties. Hazel filed an accounting for the Marital Deduction Trust only, and Rogers objected to this accounting as being deficient in several ways—chiefly, that it was devoid of detail on individual assets and trust transactions, and also that it contained many unsworn declarations which coincided with Cliff and Hazel's stance in this litigation.

In April 2015, three of Cowboy's grandchildren—Lee Roy Hoskins III, Andrea Clare Jurica, and Lee Ann Hoskins Kulka—filed a motion to appoint Rodgers as receiver over the assets of both trusts. The motion set out that Rogers had previously been appointed by the arbitrator and that the probate court had already made comments and entered orders which impliedly "recognized the standing and role of the Receiver." The motion urged the court to formally appoint Rogers and grant him the authority to pursue this litigation on behalf of the trusts and their beneficiaries, using funds drawn from the estate.

Various other parties filed responses indicating support for Rogers's appointment. Cowboy's son Leonard argued that the appointment would control legal fees and expedite presentation of the case. Morrill, who is the trustee of the Residuary Trust, argued that because Hazel had left the trusts underfunded, he had no resources to pursue litigation; he supported the appointment as a means of controlling expenses and, in the alternative, moved to resign if no receiver or "ad litem" were appointed to pursue litigation in his place. Basic statements of support were also filed by Cowboy's grandsons Rex and Daniel Hoskins as well as Carter, the trustee of the Marital Deduction Trust. On May 11,

6. Cowboy's will provided that the district court judge, acting as an individual and not in an official capacity, would appoint successor trustees.

2015, Hazel filed her objections to the appointment of Rogers as receiver for the trusts.

On July 15, 2015, the probate court held a hearing on the receivership motion. It heard extensive arguments from counsel, but no evidence was offered or admitted. The probate court asked for additional post-hearing briefing. Cliff joined Hazel in that briefing, arguing against the appointment of Rogers as receiver.

On October 2, 2015, the probate court signed an order appointing Rogers as "receiver" for the trusts, to be compensated from the estate. According to the order, Rogers's sole responsibility as "receiver" was to prepare a written report determining what estate assets, if any, should have been distributed to either trust, where each asset was located, who owned each asset, and the approximate fair market value of each asset. Following the receipt of the report, the dependent administrator McCully was directed to "file a Motion with the Court seeking authority to transfer the assets or claim for the assets to the [trusts]." Then each trustee was to "determine the viability of pursuing litigation to recover assets that should have been distributed to his respective trust." Finally, the order set out that "[a]dditional authority for the Receiver to file litigation to recover assets on behalf of one or both of the Trustees will require further order of the Court." Cliff filed this interlocutory appeal from the October 2015 order.[7]

## II. JURISDICTION ON APPEAL

As an initial matter, we consider appellees' argument that this Court is without jurisdiction. It is undisputed that the federally-appointed arbitrator had named Rogers as receiver of the two trusts. In light of this fact, appellees argue that in the present suit, the probate court's "Order Appointing Receiver" is in fact a *confirmation* of the arbitrator's prior order appointing Rogers. Appellees argue that the Texas Civil Practice and Remedies Code only provides for interlocutory review of an order which "appoints a receiver;" because the probate court confirmed Rogers's role rather than appointing him, appellees argue, we are therefore without jurisdiction to hear this interlocutory appeal. In the alternative, appellees point out that even before the probate court issued the "Order Appointing Receiver" that is the subject of this appeal, the probate court sometimes referred to Marcus Rogers as "receiver" in hearings and even in its orders. Appellees argue that these references have the legal effect of orders appointing or confirming Rogers's status as receiver. Appellees reason that because Cliff did not appeal these "orders," Cliff's present appeal is untimely, which also deprives this Court of jurisdiction.

### A. Applicable Law

▮ A party may bring an interlocutory appeal from an order appointing a receiver. TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(1) (West, Westlaw through 2015 R.S.); *Diana Rivera & Assocs., PC v. Calvillo*, 986 S.W.2d 795, 796 (Tex.App.— Corpus Christi 1999, pet. denied). An untimely notice of appeal, filed beyond the deadline for motion to extend, does not invoke the jurisdiction of this Court. *See Verburgt v. Dorner*, 959 S.W.2d 615, 617 (Tex.1997); *Ashley v. Harris Cnty. Risk Mgmt.*, 104 S.W.3d 905, 906 (Tex.App.— Corpus Christi 2003, no pet.); *see also* TEX. R. APP. P. 25.1(b), 26.1, 41(a).

▮ The same rules of interpretation apply in construing the meaning of a court order as in ascertaining the meaning of

---

7. Hazel died on October 26, 2015, after the notice of appeal was filed.

other written instruments. *Lone Star Cement Corp. v. Fair*, 467 S.W.2d 402, 404–05 (Tex.1971) (orig. proceeding). We will examine and consider the entire order so that none of the provisions will be rendered meaningless, if possible. *See Gulf Ins. Co. v. Burns Motors, Inc.*, 22 S.W.3d 417, 422 (Tex.2000). Just as with an unambiguous contract, we enforce an unambiguous order according to its plain terms. *Kourosh Hemyari v. Stephens*, 355 S.W.3d 623, 626 (Tex.2011). However, under general rules of construction, we avoid strictly construing an order's language if it would lead to absurd results. *Id.* An order is ambiguous if it is legitimately "susceptible of more than one reasonable interpretation." *Id.* Where an order is ambiguous, the order may be construed in light of the motion and the record upon which it was granted. *See Lone Star Cement*, 467 S.W.2d at 404–05; *Palomin v. Zarsky Lumber Co.*, 26 S.W.3d 690, 694 (Tex. App.–Corpus Christi 2000, pet. denied).

■ An ambiguity in an order may be said to be "patent" or "latent." *See Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex.1995). A patent ambiguity is evident on the face of the order. *Id.* A latent ambiguity arises when an order or judgment "which is unambiguous on its face is applied to the subject matter with which it deals and an ambiguity appears by reason of some collateral matter." *See Progressive Cnty. Mut. Ins. Co. v. Kelley*, 284 S.W.3d 805, 807 (Tex.2009); *Nat'l Union Fire Ins.*, 907 S.W.2d at 520.

**B. Discussion**

■ To address appellees' first argument, we ask whether the probate court's 2015 "Order Appointing Receiver" was in reality an order *confirming* Rogers as receiver, based on the arbitrator's prior appointment. The order, which is the subject of this appeal, reads in pertinent part as follows:

> On the 15th day of July, 2015, came on to be heard the Motion of Lee Roy Hoskins, Jr., Lee Roy Hoskins, III, Andrea Clare Jurica, and Lee Ann Hoskins Kulka for an Order Appointing Marcus Rogers as Receiver. Having considered the motion, the responses thereto, and the argument of counsel, the court finds that the motion should be granted in part as follows:

IT IS THEREFORE ORDERED THAT:

1. Marcus Rogers is appointed as Receiver for the Marital Deduction Trust and the Residuary Trust created under the will of Lee Roy Hoskins, Sr. dated July 20, 1982 (the "Will").

. . . .

4. The Receiver shall prepare a written report, utilizing the information contained on the Inventory filed for the Estate of Lee Roy Hoskins Sr.; the 706 Return filed for such Estate; and the Final Accounting filed by Hazel Hoskins in this cause, to determine, per the terms of the Will:

(a) To the extent the information is available, which assets, if any, should have been distributed, from the Estate to the Marital Deduction Trust and/or to the Residuary Trust; and

(b) To the extent the information is available, where each of the assets is currently located, the current ownership of such asset, and the approximate fair market value of each asset.

. . . .

6. Following receipt of the Receiver's Report, the Dependent Administratrix shall file a Motion with the Court

seeking authority to transfer the assets or claim for the assets to the Residuary Trust and/or Marital Deduction Trust (the "Motion"). Any party may file objections or responses to the Motion.

7. Any party may file written objections to the Receiver's report within fourteen (14) days following service of the Report. Such objections will be considered and ruled on by the Court at the hearing on the Administratrix's Motion.

8. The Trustee of the Marital Deduction Trust and the Trustee of the Residuary Trust shall determine the viability of pursing litigation to recover assets that should have been distributed to his respective Trust.

9. Additional authority for the Receiver to file litigation to recover assets on behalf of one or both of the Trustees will require further order of the Court.

On the face of the order, no patent ambiguity is apparent. *See Nat'l Union Fire Ins.*, 907 S.W.2d at 520. The order expressly appoints Rogers as the "Receiver for the Marital Deduction Trust and the Residuary Trust created under the will of Lee Roy Hoskins." The express terms of the order "appoint" Rogers, and these terms do not lend themselves to any other reasonable interpretation. *See id.*; *Kourosh Hemyari*, 355 S.W.3d at 626.

Likewise, we do not find any latent ambiguity in the application of this order to its subject matter. *See Progressive Cnty. Mut. Ins.*, 284 S.W.3d at 807; *Nat'l Union Fire Ins.*, 907 S.W.2d at 520. It is true that the probate court inherited a complex procedural history, through which Rogers had already been appointed as "receiver." However, this confusing "collateral matter" does not give rise to more than one genuinely reasonable interpretation of the probate court's order, because there is no aspect of the order which operates as a confirmation rather than an appointment. Generally, confirmation is the "act of giving formal approval; the ratification or strengthening of an earlier act;" in this specific context, it is "the act by which a court enters judgment on an arbitration award." *Confirmation*, BLACK'S LAW DICTIONARY (10th ed. 2014) (citing 9 U.S.C.A. § 13 (Federal Arbitration Act)); *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 171.087 (West, Westlaw through 2015 R.S.) (treating confirmation as distinct from modification); *Crossmark, Inc. v. Hazar*, 124 S.W.3d 422, 429 (Tex.App.—Dallas 2004, pet. denied) (same). Rather than ratifying or approving any of the responsibilities which the arbitrator had previously granted to Rogers, the probate court's order assigned Rogers with a new and distinct set of responsibilities. Originally, the arbitrator appointed Rogers to take possession of all trust property and administer the trust, to determine whether Hazel was capable of continuing as trustee, to make such other recommendations on a course of action, and to create a report on matters relating to that separate litigation. In Rogers's report to the arbitrator, he addressed the case's background, Hazel's alleged breaches of the trust, her ability to continue as trustee, and the legal viability of claims which remained in the arbitration.

By contrast, the probate court did not order Rogers to perform any of those tasks, and it in fact stated that Rogers would need to seek further order of the court before he would receive the probate court's imprimatur to perform those tasks. The probate court instead asked Rogers to generate a report on a very different topic: determining what estate assets, if any, should have been distributed to either trust, where each asset was located, who owned each asset, and the approximate

fair market value of each asset. Rather than confirming the receiver and his previously·ordered duties, the probate court's order signifies a new and separate appointment. *See In Interest of JRG*, 499 S.W.3d 922, 926-27, No. 08–14–00313–CV, 2016 WL 4014089, at \*3 (Tex.App.—El Paso July 27, 2016, no. pet. h.) (holding that a 1993 Texas order of child support did not confirm, modify, or supplant a 1989 support order of another court because, among other things, the 1993 order created separate support obligations that "ran currently with and independently of" those created by the ·earlier order, and because the 1993 order did not state that it related to the earlier order).

The Fifth Circuit has rejected an analogous argument under the Federal Arbitration Act (FAA). *See In re Deepwater Horizon*, 579 Fed.Appx. 256, 259 (5th Cir.2014) (per curiam); *see also Nafta Traders, Inc. v. Quinn*, 339 S.W.3d. 84, 91 (Tex.2011) ("Sections 10 and 11 of the FAA specify grounds for vacating, modifying, or correcting an arbitration award that are similar to the TAA's [i.e., the Texas Arbitration Act's], and like the TAA, section 9 of the FAA mandates confirmation absent such grounds."). In *Deepwater Horizon*, the district court had entered an order explaining that because of a pending injunction, the ·court could not confirm an arbitration award. See 579 Fed.Appx. at 258. On appeal, the appellants argued that the district court's order had the effect of formally denying confirmation of an arbitration award under the FAA. *Id.* at 259. The Fifth Circuit rejected the appellant's claim that the district court had issued a final ruling regarding confirmation:

The district court's two orders neither mentioned the FAA nor· purported to vacate, modify, or correct the Claims Administrator's awards of compensation. Nor did the district court consider any of the enumerated grounds for declining to confirm an arbitral award under 9 ·U.S.C. § 10 or § 11. Nor did the district court indicate more generally that the motions filed by Whitehead and Rocon were denied with prejudice.

*Id.*· Here, similar to *Deepwater*, the probate court's order made no mention of the ·TAA or the principles which the TAA imposes onto a confirmation proceeding. *See id.*; *see also Nafta Traders*, 339 S.W.3d at 89–90 nn. 23–24. The probate court's order thus lacks the hallmarks of either confirmation or the denial of confirmation. *See Deepwater Horizon*, 579 Fed.Appx. at 259. This lends further support to the conclusion that the probate court's "Order Appointing Receiver" was not a confirmation, as appellees contend.

Thus, based on the plain meaning and distinct operation of the probate court's order, and the absence of any hallmarks of a confirmation, we cannot conclude that the probate court's "Order Appointing Receiver" was simply a confirmation in disguise.[8]

■ Appellees next argue that even before the probate court entered the "Order Appointing Receiver," the court had included language in its earlier orders and made remarks during hearings which impliedly confirmed Rogers's authority as receiver. Appellees assert that Cliff's failure to timely appeal these confirmation "orders" deprives this Court of jurisdiction. We disagree. First, based on their plain

---

**8.**· We offer no opinion as to whether an order *confirming* a receiver is not an order which *"appoints"* a receiver," and would therefore not be subject to an interlocutory appeal under the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014 (West, Westlaw through 2015 R.S.) (emphasis added); *Diana Rivera & Assocs., PC v. Calvillo*, 986 S.W.2d 795, 796 (Tex.App.— Corpus Christi 1999, pet. denied).

terms, none of the previous orders can reasonably be construed as confirming or appointing a receiver. *See Nat'l Union Fire Ins.*, 907 S.W.2d at 520. Second, to the limited extent that there is any latent ambiguity, the surrounding record makes clear that the probate court did not intend for its orders to appoint or confirm Rogers. *See Lone Star Cement*, 467 S.W.2d at 404–05; *Palomin*, 26 S.W.3d at 694. For instance, appellees chiefly point to the probate court's "Order on Receiver's First Amended Petition," which stated that the court had "heard the First Amended Petition filed by Marcus Rogers, as Receiver of the Marital Deduction Trust and the Residuary Trust ...." Appellees contend that this language should be read as confirming or appointing Rogers. However, when read in conjunction with the pleadings that led to this order, the only reasonable interpretation of this language is that the probate court was simply reciting the capacity which Rogers claimed when he joined this suit. *See, e.g., Nueces Cnty. v. Whitley Trucks, Inc.*, 865 S.W.2d 124, 127 (Tex.App.—Corpus Christi 1993), *dismissed sub nom., F.D.I.C. v. Nueces Cnty.*, 886 S.W.2d 766 (Tex.1994) (discussing a party's "capacity as receiver"). Rogers claimed this role based on his appointment by the arbitrator, and all parties concede that Rogers was duly appointed by the arbitrator. The same is true of the probate court's other prior orders and its offhand remarks during hearings, wherein it casually referred to Rogers as the "receiver."

We conclude that these orders and remarks did not have the effect of confirming or appointing Rogers as receiver. Cliff

was not required to appeal these unrelated orders and remarks, and we are thus not lacking jurisdiction due to any untimeliness. *See Verburgt*, 959 S.W.2d at 617; *Ashley*, 104 S.W.3d at 906; *see also Roccaforte v. Jefferson Cnty.*, 341 S.W.3d 919, 924 (Tex.2011) (rejecting a jurisdictional challenge concerning appeal of an interlocutory order, stating, "We have repeatedly held that the right of appeal should not be lost due to procedural technicalities"). [9] We conclude that we have jurisdiction to hear this matter as a timely interlocutory appeal of an order appointing a receiver. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014; *Diana Rivera*, 986 S.W.2d at 796.

## III. EVIDENTIARY SUPPORT FOR APPOINTMENT OF RECEIVER

By his first two issues on appeal, Cliff contends that appellees offered no evidence which would justify a receivership under the applicable law. Cliff asserts that the probate court therefore abused its discretion by appointing a receiver.

### A. Standard of Review and Applicable Law

The appointment of a receiver lies within the sound discretion of the trial court, and we review the appointment of a receiver under an abuse of discretion standard. *In re Estate of Herring*, 983 S.W.2d 61, 65 (Tex.App.—Corpus Christi 1998, no pet.); *see Spiritas v. Davidoff*, 459 S.W.3d 224, 231 (Tex.App.–Dallas 2015, no pet.). A court may abuse its discretion by ruling "arbitrarily, unreasonably, ... without regard to guiding legal principles, or ...

9. Even assuming that appellees' jurisdictional arguments had merit, the parties have neglected to mention another potential source of appellate jurisdiction: probate cases are an exception to the "one final judgment" rule for purposes of appellate jurisdiction. *De Ayala v. Mackie*, 193 S.W.3d 575, 578 (Tex.2006). In

probate cases, an order is final and appealable before the entire proceeding is concluded if the order disposes of all parties or issues in a particular phase of the proceeding. *Id.* at 579; *Crowson v. Wakeham*, 897 S.W.2d 779, 783 (Tex.1995).

*without supporting evidence.*" *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex.1998) (emphasis added) (internal quotations omitted). As to ruling "without supporting evidence," the trial court generally does not abuse its discretion when its decision is based on conflicting evidence and some evidence in the record reasonably supports the trial court's decision. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 211 (Tex.2002).

▬ Under the abuse of discretion standard, legal and factual insufficiency are not independent reversible grounds, but are relevant components in assessing whether the trial court erred. *Coburn v. Moreland*, 433 S.W.3d 809, 823 (Tex.App.–Austin 2014, no pet.); *see also In the Interest of D.C.*, No. 13–15–00486–CV, 2016 WL 3962713 at *6 (Tex.App.—Corpus Christi July 1, 2016, no. pet. h.) (mem. op.) (same). In determining whether an abuse of discretion has occurred because the evidence is legally or factually insufficient to support the trial court's decision, we ask: (1) whether the trial court had sufficient information upon which to exercise its discretion; and (2) whether the trial court erred in the application of its discretion. *Gonzalez v. Villarreal*, 251 S.W.3d 763, 774 n. 16 (Tex.App.—Corpus Christi 2008, pet. dism'd); *In re TDC*, 91 S.W.3d 865, 872 (Tex.App.—Fort Worth 2002, pet. denied). The sufficiency review is related to the first inquiry. *See Gonzalez*, 251 S.W.3d at 774 n. 16; *see also Interest of D.C.*, 2016 WL 3962713 at *6.

▬ The burden to show the existence of circumstances justifying the appointment of a receiver rests on the party seeking the appointment. *Spiritas*, 459 S.W.3d at 232; *Elliott v. Weatherman*, 396 S.W.3d 224, 230 (Tex.App.—Austin 2013, no pet.); *Benefield v. State*, 266 S.W.3d 25, 32 (Tex. App.—Houston [1st Dist.] 2008, no pet.). The Texas Property Code provides that where a breach of trust has occurred or

might occur, the trial court may order a trustee to account or appoint a receiver to take possession of the trust property and administer the trust. TEX. PROP. CODE ANN. § 114.008(a)(4)–(5); *Elliott*, 396 S.W.3d at 228.

Subject to the control and limitation of the court, a receiver generally has the following duties and powers: (1) take charge and keep possession of the property; (2) receive rents; (3) collect and compromise demands; (4) make transfers; and (5) perform other acts in regard to the property as authorized by the court. TEX. CIV. PRAC. & REM. CODE ANN. § 64.031 (West, Westlaw through 2015 R.S.); *Diana Rivera*, 986 S.W.2d at 796.

**B. Discussion**

▬ Cliff contends that the probate court abused its discretion because there was no evidence to support its order appointing a receiver. Cliff premises this contention on a review of only the record from the receivership hearing on July 15, 2015. All parties acknowledge that the July 15 hearing was a non-evidentiary proceeding.

In response, appellees direct our attention to a hearing held July 3, 2014 and the allegedly deficient accounting Hazel produced in the months that followed. Appellees assert that the record of the 2014 hearing and the accounting both offer evidence showing a breach of trust.

At the 2014 hearing, the court received testimony from Rogers and documentary evidence concerning the trust. Rogers testified that following his appointment by the arbitrator, he made inquiries with Clifton and Hazel in order to take possession of the trusts' property, as the arbitrator had ordered. He testified that in response, Hazel and Clifton denied having any relevant documents, denied that the estate had any net assets exceeding its debt in 1985, de-

nied that the trusts had any assets, and denied that the trusts had a valid, continuing existence. A few days before the 2014 hearing, however, Hazel reversed course on each of these representations: she produced relevant documents, including a tax return which showed that the estate did in fact have net assets exceeding its debts; and she deposited over $100,000 into the registry of the court, which she admitted had been in the Marital Deduction Trust— an entity which then had a valid, continuing existence. Rogers testified that he learned of the existence of the trust assets on the morning of the hearing and that Hazel had previously refused to turn over the trust assets or to provide an accounting of the assets.

Rogers also testified that Hazel had breached the trust by transferring valuable trust property either to herself or to Clifton, to the exclusion of other beneficiaries. Rogers responded to questioning from Hazel, wherein Hazel asserted that under the terms of the will, she had the right to engage in self-dealing as the estate administrator and the trustee of both trusts. However, we note that between the time of the 2014 and 2015 hearings, the San Antonio Court of Appeals issued its opinion regarding a separate Hoskins litigation, holding that Hazel was prohibited from distributing trust income or principal to herself. *See Hoskins v. Hoskins*, No. 04–13–00859–CV, 2014 WL 5176384, at *1 (Tex.App.—San Antonio Oct. 15, 2014) (mem. op.). The Texas Supreme Court affirmed, stating: "As both the trustee and beneficiary of the marital trust, Hazel was prohibited under [Cowboy]'s will from distributing income or principal to herself from the trust, which included the fifty percent of the Company held in her capacity as trustee." *See Hoskins*, 497 S.W.3d at 491, 2016 WL 2993929, at *1; *see also Moody v. Pitts*, 708 S.W.2d 930, 936 (Tex. App.—Corpus Christi 1986, no writ) ("It is

true that a life tenant (and a trustee) has a fiduciary duty to the remaindermen not to destroy their remainders except as authorized by the terms of the will.").

It is undisputed that after the conclusion of the 2014 hearing, the probate court ordered Hazel to file a complete accounting for the estate and each trust from April 1985 to the date of the accounting. Hazel submitted an accounting for the Marital Deduction Trust, but she did not submit an accounting for the Residuary Trust. A review of the record reveals that Rogers responded by objecting to several alleged deficiencies in Hazel's accounting, including: the accounting failed to itemize any of the debts which it listed as paid; it provided no balance statements; it provided no information on the source or nature of any funds in the estate; it provided an incomplete list of estate transactions, and it provided no details for the transactions which were listed; the accounting was not supported by any documentary evidence except for the totals listed on the 1985 tax return; it showed that half of the stock of Hoskins, Inc. was in the Marital Deduction Trust in 2002 but had been removed from the trust between 2002 and 2014, and the accounting did not provide any explanation for the disappearance; the accounting contained many unsworn, partisan declarations that aligned with Hazel and Cliff's stance in this litigation, rather than providing a neutral accounting; and it excluded a large amount of cash receipts prior to 2002, which was allegedly based on Cliff's stance that the estate was not required to account for estate assets prior to a 2002 settlement agreement. For these reasons, Rogers asserted that the accounting was materially deficient under the estates and property codes. *See* TEX. ESTATES CODE ANN. § 404.001 (requirements for estate accounting); TEX. PROP. CODE ANN.

§ 113.152 (West, Westlaw through 2015 R.S.) (requirements for trust accounting).

At the 2015 hearing and in post-hearing briefs, appellees argued that Hazel's actions had left the trusts without the resources to pursue litigation. Appellees argued that because Rogers had already done much of the preparatory work at the behest of the arbitrator, his appointment would thus foster an efficient resolution to this suit, which was just the latest in a long series of lawsuits concerning a thirty-year-old estate. *See De Berrera v. Frost,* 33 Tex.Civ.App. 580, 584, 77 S.W. 637 (1903, no writ) (citing efficiency in a complex multi-party litigation as a potential rationale for appointing a receiver).

Thus, by the time the probate court appointed Rogers, it had heard evidence that Hazel had transferred valuable trust property to herself and to Cliff. In the wake of the 2014 hearing, the San Antonio Court of Appeals held that Hazel did not have the right to take certain of these actions, and this holding was later affirmed. *See Hoskins,* 2014 WL 5176384, at *1, *aff'd,* 497 S.W.3d at 491–92, 2016 WL 2993929, at *1. The probate court had heard evidence that Hazel had not been forthcoming with evidence concerning the trust, her dealings as trustee, and any assets remaining in the trust. The intervening year of delay had brought no resolution, and the parties were by then disputing the sufficiency of Hazel's accounting, which addressed only the Marital Deduction Trust.

Taken together, the appellees' evidence and persuasive argument favor the conclusion that Hazel breached the trust, and that the probate court did not abuse its discretion in appointing Rogers to take the first step toward remedying this alleged breach: creating a report to map out the current state of the assets. However, Cliff presents multiple arguments against this

evidence. First, Cliff contends that rather than "some evidence" of a "breach of trust," a higher showing is required before the probate court could appoint Rogers to create a report. *See* TEX. PROP. CODE. ANN. § 114.008(a)(5); *Butnaru,* 84 S.W.3d at 211. Cliff notes that receivership is widely said to be a "harsh" and "extraordinary" remedy that must be cautiously applied." *Elliott,* 396 S.W.3d at 228; *see Montemayor v. Ortiz,* 208 S.W.3d 627, 646 (Tex. App.—Corpus Christi 2006, pet. denied); *see also Spiritas,* 459 S.W.3d at 232; *Krumnow v. Krumnow,* 174 S.W.3d 820, 828 (Tex.App.—Waco 2005, pet. denied). For this reason, our sister courts have sometimes held that a "court may appoint a receiver over an entire corporation only if all other remedies are deemed inadequate." *See Benefield,* 266 S.W.3d at 32; *see also Elliott,* 396 S.W.3d at 228; *Rowe v. Rowe,* 887 S.W.2d 191, 200 (Tex.App.—Fort Worth 1994, writ denied).

However, whereas receivership is usually a severe remedy, we find none of that severity present in the probate court's order. The harshness normally resides in the fact that, to a greater or lesser extent, a receivership strips the defendants of control over their entity or their possessions, displacing a trustee, a corporate board, or an owner in favor of court control. A receiver normally has the following duties and powers: (1) take charge and keep possession of the property; (2) receive rents; (3) collect and compromise demands; (4) make transfers; and (5) perform other acts in regard to the property as authorized by the court. TEX. CIV. PRAC. & REM. CODE ANN. § 64.031. Here, the probate court granted none of these duties or powers to Rogers, even though the trustees requested it. Instead, Rogers was only to develop a report on the current status of the estate's assets. The power and responsibility to take ac-

tion based on Rogers's report remained with the trustees and the administrator.[10]

Rather than the harsh control of a true receivership, the probate court's order resembles another remedy: the appointment of an auditor. "When an investigation of accounts ... appears necessary for the purpose of justice between the parties to any suit, the court shall appoint an auditor or auditors to state the accounts between the parties and to make report thereof to the court as soon as possible." TEX. R. CIV. P. 172; *Diana Rivera*, 986 S.W.2d at 797. In this regard, we are guided by two of our prior decisions. In *Diana Rivera*, this Court addressed an appeal from a trial court's appointment of an auditor, wherein the appellant claimed that the auditor was, in substance, a receiver. *See* 986 S.W.2d at 797. We addressed the distinction between an auditor and a receiver, stating:

> Despite Rivera's attempts to characterize the court's actions as appointing a receiver, the order at issue merely appointed an auditor to review Rivera's accounts and to report the results. The auditor was not authorized to take over the financial aspects of Rivera's law practice. Moreover, the order specified that the auditor would be authorized to commence the examination only if Rivera failed to provide the information to the court herself.

*Id.* In many ways, Cliff stands in a similar position to the appellant in *Diana Rivera*, asking this Court to reverse an order which contains none of the harsh court-control of a true receivership. Rogers was assigned the same duties as the auditor in *Diana Rivera*, and the probate court only granted Rogers these duties after Hazel "failed to provide the information to the court herself." *See id.*

In other ways, this case resembles *In re Estate of Herring*, 983 S.W.2d 61, 65 (Tex. App.—Corpus Christi 1998, no pet.). There, the trial court issued an order to an estate administrator to sell some of the estate's community property so that the proceeds could be partitioned among the family members. *Id.* at 65. After the administrator failed to carry out the order, the administrator asked the court to appoint a receiver to assist him in his duties. *See id.* This Court upheld the trial court's appointment of a receiver with the bona fide authority to control matters of the estate. *Id.* We saw no harm or harshness in appointing a receiver to work alongside the administrator "to take an action which [the administrator] had full authority to take on his own ...." *Id.* We reasoned:

> In the past, this Court approved of the appointment of a receiver to partition property within an estate where the heirs cannot agree, noting that "the appointment of a receiver will solve most, if not all, of the vexations and problems confronting the parties on the issue of partition, as well as management of the properties. ..."

*Id.* (quoting *Gonzalez v. Gonzalez*, 469 S.W.2d 624, 632 (Tex.Civ.App.—Corpus Christi 1971, writ ref'd n.r.e.)). Here, as in *Herring*, those vitally involved in the estate—including the trustees and most beneficiaries—asked the probate court to appoint a receiver to assist the trustees and the administrator in putting an end to thirty years of "vexations." *See id.* We see no harm or harshness in the probate court's decision to grant relief, which was far less severe than that granted in *Herring* and far less generous than what the appellees originally sought. *See id.*

---

**10.** The only order giving the receiver control over the trusts was entered by the arbitrator, not the probate court.

Hazel indicated at the 2014 hearing that she favored the appointment of an auditor rather than a receiver. In substance, that is exactly what happened—and the administrator of Hazel's estate does not join in Cliff's appeal of the appointment. We do not hold that Rogers's appointment should be formally considered an auditor rather than a receiver. Rather, we simply rely in part on his resemblance to an auditor in holding that, under the distinct facts of this case, the probate court did not clearly abuse its discretion in appointing Rogers to create a report without first finding that all other half-measures would be inadequate. *See Elliott,* 396 S.W.3d at 228; *Benefield,* 266 S.W.3d at 32; *Rowe,* 887 S.W.2d at 200.

Cliff next moves to strike all evidence presented at the July 3, 2014 hearing. Cliff contends that we may not consider this evidence, given that it was presented on a different date than the July 15, 2015 hearing. Cliff also points out that the probate court prefaced its order by stating: "Having considered the motion, the responses thereto, and the argument of counsel, the court finds that the motion should be granted in part as follows ...." Cliff contends that we should interpret this as a statement that the probate court considered no other information in reaching its decision, and further contends that this means we must not consider the evidence presented at the 2014 hearing either. In support, Cliff cites the rule that recitals contained in the judgment are presumed true unless there is a conflict between the judgment and record. *Parks v. Developers Sur. & Indem. Co.,* 302 S.W.3d 920, 923 (Tex.App.—Dallas 2010, no pet.).

We disagree. Generally, an appellate court may presume that a trial court took judicial notice of its own records in the same case. *Vahlsing, Inc. v. Mo. Pac.*

*R. Co.,* 563 S.W.2d 669, 674 (Tex.Civ. App.—Corpus Christi 1978, no writ); *McCurry v. Aetna Cas. & Sur. Co.,* 742 S.W.2d 863, 867 (Tex.App.—Corpus Christi 1987, writ denied); *see Sw. Gas Pipeline, Inc. v. Scaling,* 870 S.W.2d 180, 186 (Tex.App.—Fort Worth 1994, writ denied); *Marble Slab Creamery, Inc. v. Wesic, Inc.,* 823 S.W.2d 436, 439 (Tex.App.—Houston [14th Dist.] 1992, no writ). "This is true even though the trial court was not asked to do so and did not formally announce that it had done so." *Vahlsing,* 563 S.W.2d at 674. A trial judge judicially knows what has previously taken place in the case on trial. *Id.*

Here, there are several circumstances which strengthen a presumption that the probate court judicially knew what had previously taken place. *See id.* For one, the record evidence relates not only to the "same case," but to the same issue within the case. *See McCurry,* 742 S.W.2d at 867. The 2014 and 2015 hearings both dealt with the same issues: determining the first step in remedying Hazel's alleged breach of trust—namely, developing an accounting to determine the present status of the estate's assets. After hearing evidence concerning Hazel's breach at the 2014 hearing, the probate court ordered Hazel to prepare an accounting. When, a year later, her accounting proved unsatisfactory to the other side, the probate court ordered Rogers to prepare one. On the facts of this case, it would be unreasonable to expect the probate court to cabin off its view of the case, ignoring the evidence it previously heard on the exact same issue. For another, in advance of the 2015 hearing, Hazel submitted several pages of the reporter's record for the 2014 hearing as an exhibit to her response. Appellees also submitted the excerpts of the 2014 hearing as support for their motions. Finally, the probate court gave some indication that it

was cognizant of this record evidence. At the 2015 hearing, both sides recounted the events of the 2014 hearing. Hazel objected, arguing that the probate court should not consider any of appellees' arguments as evidence. The court responded "Well, I believe I have not heard anything that's not in the record ...." Based on these considerations, we will presume that the probate court took judicial notice of its own records in this case. *See Vahlsing*, 563 S.W.2d at 674.

As for Cliff's argument concerning the order's recital, when the court stated that it had considered the "motion, the responses thereto, and the argument of counsel," the probate court did not state that it considered no other sources of information besides the motions, responses, and arguments. Moreover, Cliff's reliance on *Parks* is misplaced; that case held that a judgment recital *broadened* the probate court's apparent range of considerations, not narrowed it. *See* 302 S.W.3d at 923. Cliff produces no authority for the much different proposition he advances here: that those sources of information which the probate court does not expressly recite in its order were conclusively excluded as a basis for decision, and that the appellate court therefore may not review those portions of the record.[11] *Cf. Moreno v. Perez*, 363 S.W.3d 725, 736 (Tex.App.—Houston [1st Dist.] 2011, no pet.) (refusing to consider evidence offered at an earlier hearing

because the trial court "specifically disclaimed an intention to rely on earlier testimony and instructed the petitioners to put on any evidence needed to support their requested final judgment"). We deny Cliff's motion to strike.[12]

In his final set of arguments against the appellees' evidence, Cliff contends that the probate court abused its discretion because only Hazel breached the trust, and the current trustees committed no breach of trust. Cliff impliedly asserts that Hazel's death and the appointment of a successor trustee rendered any past breach of trust harmless and made Rogers's appointment unnecessary.

In support, Cliff points to the text of the statute, which authorizes several remedies in the event of a breach of trust, one of which is the appointment of a receiver. *See* TEX. PROP. CODE ANN. § 114.008. This section states:

(a) To remedy a breach of trust that has occurred or might occur, the court may:

(1) compel the trustee to perform the trustee's duty or duties;

(2) enjoin the trustee from committing a breach of trust;

(3) compel the trustee to redress a breach of trust, including compelling the trustee to pay money or to restore property;

(4) order a trustee to account;

11. To the extent that Cliff's argument has any merit, we note that the trial court expressly considered "the motion" and the "responses thereto," both of which were complemented with excerpts from the 2014 hearing, and "the argument of counsel" at the 2015 hearing, which summarized portions of the evidence from the 2014 hearing.

12. Cliff also moves to strike from the record all evidence and argument presented at a different hearing held May 6, 2014, as well as a report from Rogers which, Cliff alleges, was received by the trial court on March 13, 2016.

We deny his motion to strike the May 6 portion of the record for the same reasons stated above. Rogers's report plays no part in our consideration of this appeal, but we need not strike it from the record in order to signify that we do not consider it. *See* TEX. R. APP. P. 34.5(c); *Roventini v. Ocular Scis., Inc.*, 111 S.W.3d 719, 726 (Tex.App.—Houston [1st Dist.] 2003, no pet.); *see also Graham v. Pazos De La Torre*, 821 S.W.2d 162, 165 (Tex.App.—Corpus Christi 1991, writ denied) (discussing our "wide discretion" in overseeing supplementation of the record).

(5) appoint a receiver to take possession of the trust property and administer the trust;

(6) suspend the trustee;

(7) remove the trustee as provided under Section 113.082;

(8) reduce or deny compensation to the trustee;

(9) subject to Subsection (b), void an act of the trustee, impose a lien or a constructive trust on trust property, or trace trust property of which the trustee wrongfully disposed and recover the property or the proceeds from the property; or

(10) order any other appropriate relief. *Id.* Cliff observes that many of the remedies are phrased in the present tense and seem to be addressed toward the current trustee. *See id.* Cliff argues that because of the present-tense phrasing and orientation toward the current trustee, these remedies should only be applied to remedy breaches committed by a current trustee. He reasons, therefore, that the probate court abused its discretion in applying one of these remedies to cure Hazel's past breach.

We disagree. Cliff's focus on the statute's verb tense is misplaced. "Consistent with the legislature's instruction under the Code Construction Act, we should not focus on verb tense in determining legislative intent because words in the present tense include the future tense." *In re Nabors,* 276 S.W.3d 190, 197 n. 8 (Tex.App.—Houston [14th Dist.] 2009, no pet.) (citing Texas Code Construction Act, TEX. GOV'T CODE ANN. § 311.012 (West, Westlaw through 2015 R.S.)). Nothing in section 114.008 says that the probate court may not order any remedy unless the current trustee committed the breach. Rather, other sections within the same chapter make clear that breaches of trust are not necessarily resolved by replacing a trustee with

a successor trustee. *See* TEX. PROP. CODE ANN. § 114.002 (West, Westlaw through 2015 R.S.). Under section 114.002, a successor trustee can be held liable if the successor improperly permits the breach to continue, fails to make a reasonable effort to compel the predecessor trustee to deliver the trust property, or fails to make a reasonable effort to compel a redress of a breach of trust committed by the predecessor trustee. *Id.* If the appointment of a successor automatically rendered the misdeeds of a prior trustee harmless, section 114.002 would be made meaningless. Indeed, as we discussed above, there is some evidence that the purported harm from Hazel's alleged breach persists today, despite the appointment of two successor trustees.

We conclude that there is some evidence in the record which supports the conclusion that Hazel breached the trust, and we have addressed each of Cliff's arguments against this evidence. *See id.* § 114.008(a)(5); *Butnaru,* 84 S.W.3d at 211. We therefore conclude that the probate court did not abuse its discretion in appointing Rogers as "receiver"—at least in the distinctive sense that that term is used in this case. *See Herring,* 983 S.W.2d at 65. We overrule Cliff's first two issues.

## IV. APPOINTMENT OF A DISINTERESTED RECEIVER

By his third issue, Cliff contends that even if a receivership was otherwise appropriate, Rogers was not an appropriate person to fill that role. According to Cliff, the probate court abused its discretion in appointing Rogers, because such a position can only be filled by a neutral, disinterested person. Rogers has admitted that his fees as receiver were paid by Leonard Hoskins following the arbitration proceedings, and it is undisputed that Leonard has filed suit against Clifton in

the past. *See Hoskins*, 497 S.W.3d at 491–93, 2016 WL 2993929, at **1–2. Cliff asserts that Rogers therefore has a "clear financial interest in aligning himself" with Leonard and, by extension, Leonard's children, who are among the appellees here.

 "By statutory definition—as well as necessity—a receiver must be both a non-party and disinterested in the outcome of the case." *Wiley v. Sclafani*, 943 S.W.2d 107, 110 (Tex.App.—Houston [1st Dist.] 1997, no writ) (citing TEX. CIV. PRAC. & REM. CODE ANN. § 64.021(a) (West, Westlaw through 2015 R.S.)). "A 'receiver' is an indifferent person, between the parties to a cause, appointed by the court to receive and preserve the property or fund in litigation *pendente lite*." *Id.* (internal quotations omitted).

Cliff's argument is unavailing. Our review of the record confirms that when Leonard petitioned the arbitrator to appoint a receiver, the arbitrator ordered Leonard to pay the receiver's fees. It is undisputed that the arbitration agreement provided the arbitrator with authority to assess any party with costs. *See In re C.A.K.*, 155 S.W.3d 554, 564 (Tex.App.—San Antonio 2004, pet. denied) (upholding arbitrator's assessment of costs given that arbitration agreement provided the arbitrator with this authority). Appellees correctly argue there is no evidence that Leonard requested that he be ordered to compensate the receiver—and there is no reason to assume that Leonard would insist that he bear these costs. We cannot conclude that Leonard created a conflict by complying with the arbitrator's order apportioning costs—an order that was favorable to Cliff's co-party, Hazel. *See id.*; *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 171.092 (West, Westlaw through 2015 R.S.) (providing the trial court with the discretion to award costs in the arbitration-confirmation proceedings).

Finally, appellees point out that when the probate court appointed Rogers in this separate litigation, the court ordered that Rogers's fees would no longer by paid by Leonard, but would instead be paid out of the estate. Thus, to the extent that Leonard's fee-payment created any potential for conflict, the probate court took corrective action to mitigate such a conflict. We conclude that the probate court did not abuse its discretion by appointing Rogers as a suitable receiver. *Wiley*, 943 S.W.2d at 110. We overrule Cliff's third issue.

## V. CONCLUSION

We affirm the order of the trial court.