

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|  |  |  |
|---|---|---|
| § | | No. 08-14-00313-CV |
| IN THE INTEREST OF J. R. G., A CHILD. | § | |
| | § | Appeal from the |
| | § | 383rd District Court |
| | § | of El Paso County, Texas |
| | § | (TC# 93AG760) |
| | § | |

## **O P I N I O N**

This is a child support case.  The Office of the Texas Attorney General (OAG) appeals from a 2014 declaratory judgment that interpreted a 1993 Texas child support order that in turn arose from a 1989 Alaska divorce decree.  The OAG first argues that the 2014 declaratory judgment is not final and asks us to abate the appeal so that the trial court can render a final judgment.  In the alternative, the OAG asserts the trial court failed to correctly apply RURESA (the Revised Uniform Reciprocal Enforcement of Support Act) in construing the 1993 Texas child support order and applied the wrong interest rates to Father's child support obligations.

We conclude the 2014 declaratory judgment is final and appealable.  We also conclude that under RURESA the 1993 Texas child support order did not modify or supplant Father's child support obligations contained in the 1989 Alaska divorce decree.  We also conclude the trial court

applied the wrong interest rates.   We reverse and remand the case to the trial court for proceedings consistent with this opinion.

## BACKGROUND

In February 1989, the Alaska Superior Court at Anchorage issued a decree dissolving the marriage of J.R.G.'s Mother and Father.   The decree included orders of monthly child support for the child J.R.G (the 1989 Alaska support order).   Father was ordered to pay "$325 for Nov. & Dec. 1988, then he shall pay $450 per month with $25 increases every June 1st."

The Alaska Child Support Enforcement Division subsequently transmitted a "Uniform Support Petition" to the Texas OAG, alleging Father had failed to comply with the 1989 Alaska support order resulting in a child support arrearage of $20,694.38.   The Petition sought an order for payment of child support and medical coverage, and for payment of arrearages.   The Petition did not ask the OAG to seek a modification of the 1989 Alaska support order.

In January 1993, the OAG filed a petition under RURESA seeking an order requiring Father to pay child support as requested by the State of Alaska.   After hearing, the Texas trial court issued an April 20, 1993 "Order Under Revised Uniform Reciprocal Enforcement of Support Act" (the 1993 Texas support order).   The court found Father had failed to pay the Alaska court-ordered child support arrearage of $20,694.38, rendered judgment against Father in that amount, and ordered Father to begin paying that amount off at $50 per month beginning on May 1, 1993.   The court also ordered Father to pay child support payments of $166.25 per month beginning May 1, 1993.   The 1993 Texas support order does not contain language modifying the 1989 Alaska support order nor does it contain any language stating that the 1993 Texas support order is the controlling order.

2

In 2006, the OAG filed a "Motion to Confirm Support Arrearage (UIFSA)," alleging the child support arrearage under the 1993 Texas support order was $60,689.19 as of March 1, 2006. The trial court subsequently approved the OAG's notice of non-suit without prejudice. In 2007, the OAG filed a "Notice of Registration of Foreign Support Order (UIFSA)," which alleged an arrearage of $153,170.86 as of January 12, 2007. The OAG's notice was supported by a registration statement submitted by the State of Alaska seeking enforcement of the 1989 Alaska support order. The registration statement identifies a child support arrearage of $153,170.86 computed from February 23, 1989 to January 12, 2007. The trial court approved the OAG's non-suit of its enforcement motion without prejudice. In 2010, Father filed a petition for declaratory judgment seeking a declaration that, among other things, the Texas court has exclusive jurisdiction over the child support issues under the Uniform Interstate Family Support Act, that the 1993 Texas support order was the only order under which Father was required to pay child support, and that all arrearages and interest had been paid in full under that order.

The case went to trial before the court in June 2013, and on September 12, 2014, the trial court signed a "Declaratory Judgment and Order for Release of Funds Held by Attorney General." In the Declaratory Judgment, the trial court declared that the 1993 Texas support order had been entered pursuant to RURESA. The trial court declared that the 1993 Texas support order found Father had failed to pay court-ordered child support of $20,694.38 as of January 1, 1992 with interest at 10 percent per annum from April 7, 1993, and had entered judgment for that amount to be paid at $50 per month beginning May 1, 1993 until paid. The trial court also declared that the 1993 Texas support order was the only outstanding order of unpaid child support, and the order had "reduced the amount of child support previously ordered by the Alaska Court" and had

3

ordered Father "to pay regular child support payments of $166.25 each month beginning the first day of May, 1993" until the child turned 18 or as long as the child was regularly enrolled in an accredited high school.

The court also declared that the OAG had been charging 10 percent compound interest on the unpaid balance of child support whereas the 1993 Texas support order provided for an interest rate of 10 percent per annum. The court declared that the OAG's calculations of interest on unpaid child support "should be figured" on the $20,694.38 arrearage as 10 percent simple interest from May 1, 1993 until paid, and should be figured on "any additional unpaid child support" as "12% per year" up to January 1, 2002, and as "6% simple interest" from "January 1, 2001 [sic] until present[.]" The trial court ordered that any additional funds on deposit with the OAG should be returned to Father.

The OAG filed a motion for new trial, asserting among other things that the application of the various interest rates was "inaccurate," and that the court had failed to clarify the amount of the child support arrearage owed, making the September 12, 2014 declaratory judgment "an unappealable interlocutory order as it does not contain a child support arrearage judgment." This motion was overruled by operation of law.

## DISCUSSION

### *Final Order*

In its first issue, the OAG asserts the trial court's declaratory judgment is neither final nor appealable for three reasons: (1) the trial court failed to declare whether RURESA applied to the case; (2) the trial court did not adjudicate an arrearage amount or declare, as Father had requested in his petition for declaratory judgment, that all child support, arrearages, and interest had been

4

paid in full; and (3) the various interest rates were erroneous and contradictory.[1]   The OAG

therefore requests that we abate this appeal, remand the case, and order the trial court to modify its

declaratory judgment to make it final and appealable.   *See* TEX. R. APP. P. 27.2.

We disagree with the OAG's contention that the trial court's declaratory judgment is not

final and appealable.   The declaratory judgment was rendered after a conventional trial on the

merits.   Under the *Aldridge* presumption, any judgment following a conventional trial on the

merits is presumed to be final for purposes of appeal.   *Vaughn v. Drennon*, 324 S.W.3d 560, 561,

562 (Tex. 2010) (per curiam); *see NE. Indep. Sch. Dist. v. Aldridge*, 400 S.W.2d 893, 897-98 (Tex.

1966).   A judgment following a conventional trial on the merits need not dispose of every party

and claim for the *Aldridge* presumption to apply.   *Vaughn*, 324 S.W.3d at 561, 562, 563;

*Aldridge*, 400 S.W.2d at 895, 897-98.   Unless a trial court orders a separate trial to resolve a

specific issue, there is a presumption that the trial court's judgment disposes of all claims and

issues in the case.   *Vaughn*, 324 S.W.3d at 563; *Aldridge*, 400 S.W.2d at 897-98.

We find nothing in the record to dispel the presumption of finality.   While Father asked in

part for a declaration that he had paid all arrearages and interest in full under the 1993 Texas

support order , at the hearing on entry of judgment, Father presented a proposed judgment to the

trial court that did not ask for a declaration that Father had paid all arrearages in full.   Father

requested the court to enter judgment in accordance with his proposed judgment, and the trial court

entered that judgment with only one minor modification.   Thus, the trial court was not asked to

adjudicate an arrearage amount or to declare Father had already paid all arrearages in full.   *See*

*Town of Griffing Park v. City of Port Arthur,* 628 S.W.2d 101, 103 (Tex.App. – Beaumont 1981,

writ ref'd n.r.e.) ("The fact that other issues in the general controversy between the parties remain

---

[1]  Neither Father nor Mother filed a brief in this appeal.

unresolved by a declaratory judgment does not deprive the court of the power and discretion to render such a judgment."); *see also Lee v. Kline*, No. 14-98-00268-CV, 2000 WL 19227, at \*8 (Tex.App. – Houston [14th Dist.] Jan. 13, 2000, pet. denied) (opin. on reh'g, not designated for publication) (same).

Further, the judgment declared that the 1993 Texas support order had been entered pursuant to RURESA. That the trial court improperly applied RURESA and erroneously applied various interest rates, as discussed below, does not affect the finality of the judgment for purposes of appeal. It just means the judgment is incorrect. Issue One is overruled.

### *Application of RURESA*

In its declaratory judgment, the trial court recognized that the 1993 Texas support order was rendered under RURESA. The trial court declared that the 1993 Texas support order modified, and effectively replaced, the 1989 Alaska support order:

> In [the 1993 Texas support order], the Court reduced the amount of child support previously ordered by the Alaska Court and ordered [Father], as Obligor to pay regular child support payments of $166.25 each month beginning the first day of May, 1993[.]
>
> . . .
>
> There has not been an additional judgment as to unpaid child support since the order of April, 1993.

OAG contends in its second issue that the trial court's declaration was erroneous because, in order to modify or supplant the 1989 Alaska support order under RURESA, the 1993 Texas support order was required to state explicitly that it was modifying the 1989 Alaska support order or that it was the controlling order. According to the OAG, construing the 1993 Texas support order properly under RURESA, it did not modify or replace the 1989 Alaska support order but

rather created a new, parallel child support order running concurrently with and independently of the 1989 Alaska support order. We agree.

RURESA was effective when the 1993 Texas support order was rendered on April 20, 1993. RURESA became effective on November 1, 1987, and remained effective until it was amended and replaced by the Uniform Interstate Family Support Act (UIFSA), which became effective September 1, 1993. Act of July 19, 1987, 70th Leg., 2nd C.S., ch. 49, § 2, 1987 Tex. Gen. Laws. 145, 158; Act of May 26, 1993, 73th Leg., R.S., ch. 970, § 1, 1993 Tex. Gen. Laws. 4212, 4224–231. UIFSA applied only to orders, decrees, or judgments entered on or after September 1, 1993. Act of May 26, 1993, 73th Leg., R.S., ch. 970, § 16, 1993 Tex. Gen. Laws. 4212, 4235; s*ee McConnell v. Att'y Gen. of Texas*, 878 S.W.2d 281, 283 n.1 (Tex.App. – Corpus Christi 1994, no writ) ("RURESA was amended in 1993 and is now codified as the Uniform Interstate Family Support Act. . . . The amended Act took effect September 1, 1993, and applies only to an order, decree, or judgment entered on or after that date.").

Because RURESA was still effective until September 1, 1993, the 1993 Texas support order rendered on April 20, 1993 must be construed under RURESA provisions in effect at that time. And, those provisions provided that RURESA proceedings were ancillary proceedings that did not preclude a party from enforcing the original order. *McConnell*, 878 S.W.2d at 283; *State v. Borchers*, 805 S.W.2d 880, 882 (Tex.App. – San Antonio 1991, writ denied). RURESA "supplements but does not supplant other enforcement remedies." *McConnell*, 878 S.W.2d at 283-84 (quoting *Sheres v. Engelman*, 534 F.Supp. 286, 290 (S.D.Tex. 1982)). A "RURESA proceeding is in addition to, and not in substitution for, any other order of support that may exist." *Smith v. Steen*, 833 S.W.2d 178, 179 (Tex.App. – Austin 1992, no writ) (per curiam).

7

Accordingly, RURESA provided for the contemporaneous existence of two independently valid support orders providing for child support payments in different amounts. *McConnell*, 878 S.W.2d at 284; *Borchers*, 805 S.W.2d at 881-82.

In particular, RURESA provided that its remedies were in addition to and not in substitution for any other remedies "even though prior orders of support exist in this state or any other jurisdiction." *McConnell*, 878 S.W.2d at 284 (quoting the RURESA version of TEX. FAM. CODE ANN. § 21.03 (Vernon Supp. 1993)).[2] RURESA further provided that a support order made by one state was not nullified by a support order made by any other state "unless otherwise specifically provided by the court." *McConnell*, 878 S.W.2d at 284 (quoting the RURESA version of TEX. FAM. CODE ANN. § 21.31 (Vernon Supp. 1993)).[3] Moreover, a RURESA proceeding was not considered a suit affecting the parent-child relationship, and thus a RURESA petition could not be deemed as a motion to modify or nullify another child support order. *Smith*, 833 S.W.2d at 179.

In its declaratory judgment, the trial court recognized that the 1993 Texas support order was rendered under RURESA. But, the trial court declared that the 1993 Texas support order modified and effectively replaced the 1989 Alaska support order. The 1993 Texas support order, however, did not specifically provide that it was modifying, supplanting, replacing, or controlling over the 1989 Alaska support order. Thus, properly construed under RURESA, the 1993 Texas support order did not modify or replace the 1989 Alaska support order. Instead, the 1993 Texas support order established a new parallel child support order running concurrently with and independently of the 1989 Alaska support order.

---

[2]  Act of July 19, 1987, 70th Leg., 2nd C.S., ch. 49, § 1, 1987 Tex. Gen. Laws. 145, 146.

[3]  Act of July 19, 1987, 70th Leg., 2nd C.S., ch. 49, § 1, 1987 Tex. Gen. Laws. 145, 151.

Therefore, the trial court erred when it declared that the 1993 Texas support order "reduced the amount of child support previously ordered by the Alaska Court." Rather, the 1993 Texas support order established a new, parallel support order that Father "pay regular child support payments of $166.25 each month beginning the first day of May, 1993[.]" That child support obligation ran concurrently with and independently of Father's child support obligations under the 1989 Alaska support order. Issue Two is sustained.

*Interest Rates*

In Issue Three, the OAG contends the various interest rates the trial court declared applicable are erroneous. We agree.

The OAG correctly points out that under the Texas Family Code, the proper interest rate for arrearages confirmed before January 1, 2002 is the statutory interest rate effective at the time the arrearage judgment was rendered which continues until the confirmed arrearage is paid. We also agree with the OAG that any unconfirmed arrearages that accrued before January 1, 2002 are subject to the relevant statutory interest rate that applied before January 1, 2002, and that for all unconfirmed arrearages accruing on or after January 1, 2002, interest accrues at 6 percent simple interest per year. TEX. FAM. CODE ANN. § 157.265 (West 2014); *see In re M.C.C.*, 187 S.W.3d 383, 385 (Tex. 2006) (per curiam) ("Accordingly, under the statute, any unpaid child support payments that have not been judicially confirmed will include twelve percent interest accrued through December 31, 2001. Beginning January 1, 2002, the unpaid child support that is not judicially confirmed, including the twelve percent interest already included in the debt, will start accruing any new interest at the rate of six percent. However, any unpaid child support that was judicially confirmed before January 1, 2002, will not start to accrue the six percent interest on

9

January 1, 2002, but will accrue at the rate set at the time of the trial court's order." ).

The declaratory judgment provided that the interest on the confirmed arrearage of $20,694.38 should be calculated as 10 percent "simple interest" from May 1, 1993 until paid. As to any additional unpaid child support, the declaratory judgment provided, rather confusingly, that interest should be calculated at 12 percent "per year" from "September 1, 1993 to May 1, 1993,"[4] and from "April 20, 1995 to January 1, 2002." Finally, the declaratory judgment provided that for "any additional unpaid child support accrued" from January 1, 2001[5] until present, interest should be calculated at 6 percent simple interest.

We agree with the OAG that under the relevant statutes, the trial court should have declared that Father should have paid: (1) an annual interest rate of 10 percent "computed monthly" on the confirmed arrearage of $20,694.38; (2) an annual interest rate of 12 percent simple interest on all unconfirmed arrearage amounts accrued after September 1, 1993 until December 31, 2001; and (3) an annual interest rate of 6 percent simple interest on all unconfirmed arrearage amounts accrued on or after January 1, 2002.[6] Issue Three is sustained.

**CONCLUSION**

---

[4] We assume "September 1, 1993 to May 1, 1993" is a scrivener's error.

[5] We also assume "January 1, 2001" is a scrivener's error, and the trial court most likely intended that date to be "January 1, 2002."

[6] Beginning September 1, 1991, the statutory annual interest rate was 10 percent "computed monthly" on all unpaid child support arrearages. Act of May 25, 1991, 72nd Leg., R.S., ch. 467, § 1, 1991 Tex. Gen. Laws. 1693, 1693 (now amended former TEX. FAM. CODE ANN. § 14.34).

Beginning on September 1, 1993 the new statutory annual interest rate was 12 percent simple interest. Act of May 6, 1993, 73th Leg., R.S., ch. 150, § 1, 1993 Tex. Gen. Laws 302, 302 (now amended former TEX. FAM. CODE ANN. § 14.34).

Beginning on January 1, 2002, the new statutory annual interest rate was six percent simple interest. Act of May 25, 2001, 77th Leg., R.S., ch. 1491, § 1, 2001 Tex. Gen. Laws 5294, 5294 (later amended to current version of TEX. FAM. CODE ANN. § 157.265).

We reverse the trial court's judgment and remand for proceedings consistent with this opinion.

STEVEN L. HUGHES, Justice

July 27, 2016

Before McClure, C.J., Rodriguez, and Hughes, JJ.