COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| MARK D. WALKER, | § | No. 08-20-00029-CV |
| | | |
| Appellant, | § | Appeal from the |
| | | |
| v. | § | 426th District Court |
| | | |
| TAKELYA L. WALKER, | § | of Bell County, Texas |
| | | |
| Appellee. | § | (TC#294,292A) |

# O P I N I O N[1]

Appellant Mark D. Walker (Father), pro se, appeals from a Final Decree of Divorce dissolving his marriage to Appellee Takelya L. Walker (Mother). Father's appeal relates only to the trial court's orders affecting the parent-child relationship. In four issues, Father asserts the trial court abused its discretion: (1) in denying his request to be appointed the primary joint managing conservator of the children; or, alternatively, in failing to impose a geographical restriction on the children's residence, (2) in violating his parental rights in such a manner as to aid parental alienation, (3) in determining the amount of child support arrears and interest rate applied to such arrears, and (4) in denying other requested relief. We affirm in part and reverse and remand in part.

---

[1] This case was transferred from the Third Judicial District of Texas, our sister court in Austin (Appellate case no. 03-20-00018-CV), and we decide it in accordance with the precedent of that court. TEX. R. APP. P. 41.3.

## I. BACKGROUND

Father and Mother were married in January 2016.[2] Their daughter, M.L.W., was born on May 29, 2016. On November 23, 2016, Father filed for divorce, but the divorce was not further pursued as the parties soon reconciled. In June 2017, Mother found out she was pregnant with their second child. Father again filed for divorce on July 27, 2017. Although Father originally filed pro se, he was later represented by counsel for a time. The proceedings spanned two years in the court below. During that time, the trial court held two temporary orders hearings and a final hearing that took place over four settings. The contested issues concerned the conservatorship of the children, possession of and access to the children, child support, and medical support.[3]

In September 2017, the parties entered into a handwritten agreement titled, "Temporary Rule '11' Agreement Until Court Resumes," due to the interruption of a temporary orders hearing. With their second child not yet born, the agreement solely addressed rights and obligations pertaining to their first child, M.L.W. The parties agreed each would be designated a joint managing conservator, with the child's domicile restricted to Bell County, Texas. The agreement further provided that Mother had the right of possession of the child at all times not designated for Father. Father's possession followed the modified expanded standard possession order and, on the second and fourth week of each month, Father also had possession of the child from Tuesday afternoon until Wednesday morning. Both parents held a right of first refusal. The agreement further provided that, beginning October 1, 2017, Father shall pay $1,430 a month in child support to Mother, and each month thereafter, except he would be credited in October for $319 already

---

[2] When Father and Mother met, Mother already had two sons from a prior marriage who are not subjects of this suit. For their privacy, we refer to Mother's two elder sons by their initials, D.W. and D.J.W., with D.W. being the oldest of the two.

[3] On December 14, 2018, the parties entered into a partial mediated settlement agreement concerning the property of the marriage. All issues relating to the division of the community property were fully resolved.

2

paid for daycare. As further stated, all future child support payments would be made by Father to his attorney who would forward each payment to Mother's attorney.[4]

The parties second daughter, F.T.G.W., was born on February 19, 2018. In March 2018, Father filed a motion for further temporary orders asserting Mother made it difficult for him to pick up M.L.W. from daycare and requested to be appointed joint managing conservator of F.T.G.W. In May, a hearing was held on Father's motion and after testimony from Father and Mother, the trial court took the decision under advisement.

In May, June, October, and December 2019, the trial court conducted an ongoing final hearing of the parties' contested issues. At the time of trial, Father had retired from the United States Army with the rank of major while Mother remained in active duty with the Army ranked as a Captain. At the hearing of May 15, 2019, the trial court heard testimony from four witnesses. First, Dennis McAfee, a Harker Heights patrol sergeant, testified he had responded to a call where Father had reported "his daughter was picked up at the day care . . . without his permission or knowledge." Second, Kandice Reyes, Mother's Company Commander, testified to Mother's relocation assignments with the military. Third, Willie White, Mother's ex-husband and the father of her two elder children, D.W. and D.J.W., testified to concerns he had regarding Father. Finally, Father began his testimony, but the trial court recessed before it was completed.

On June 19, 2019, the final hearing continued where Father completed his testimony and Mother began her testimony. As the trial court recessed the hearing without completion, it ordered Father to have possession of M.L.W. pursuant to the standard possession order—including a summer possession for the month of July—and possession of F.T.G.W. from June 21 at 6:00 p.m. to June 25 at 6:00 p.m. The trial court also permitted Mother to leave Bell County with the children

---

[4] It is contested that a subsequent temporary order terminated the terms of the Agreed Temporary Orders. We address the issue in greater detail within the third issue of this decision.

and relocate to Maryland.[5]

On October 3, 2019, the trial court continued the previous hearing. At the start, the court permitted Father's attorney to withdraw, and Father then continued without representation. Mother provided further testimony until the hearing was reset for a later date. When the hearing resumed on December 11, 2019, Mother continued and finished her testimony. The court also heard testimony from a prior neighbor of Mother's, Marcus Dancy, who testified to an altercation between Father and Mother's son. With closing arguments, Father and Mother listed their requests to the court.

On December 31, 2019, the trial court issued and signed a "Memorandum of Decision" which: (1) appointed the parties as joint managing conservators of both children with Mother having the exclusive right to designate the primary residence of the children without regard to geographic restriction; (2) ordered Father to have possession of the children in accordance with an expanded standard possession order as long as the parties were living within 30 miles of one another; (3) ordered Father to have possession of the children in accordance with the standard possession order if the parties were living more than 30 miles apart; (4) ordered exchange and travel provisions along with ordering Father to pay travel expenses; (5) ordered Father to pay Mother child support in the amount of $1,431.80 per month beginning January 1, 2020, with a like payment due each month thereafter; (6) confirmed Father to be in arrears in the payment of monthly child support in the amount of $31,460 for the months of March 2018 through December 2019, entered judgment against him for said sum plus interest thereon, and ordered wage withholding in the amount of $500 a month beginning February 1, 2020; (7) ordered Mother to

---

[5] On July 24, 2019, a further temporary orders hearing was held, and at its conclusion, the trial court ordered Father to return M.L.W. by August 1, 2019, by 6:00 p.m., at his expense. The trial court also ordered Father not to contact the military regarding Mother or the children.

provide health and dental insurance for the children at her expense, and ordered all uninsured expenses to be split by the parties; (8) ordered the parties to communicate regarding the children using an application called "CloseApp"; (9) ordered Mother's name to be changed to Takelya Benson; and (10) awarded attorney's fees in favor of Mother in the sum of $3,600 to be paid by Father. Thereafter, on May 27, 2020, the trial court signed a Final Decree of Divorce, which adopted the court's rulings, and further provided for an interest rate of 12% per annum on the judgment of $31,460 entered against Father for the child support arrearage.

Father filed a notice of appeal and requested findings of fact and conclusions of law. The trial court filed findings of fact and conclusions of law on August 10, 2020. This appeal followed.

## II. DISCUSSION

Father raises four issues on appeal. He first questions whether the trial court abused its discretion by denying both his appointment as primary managing conservator and his request for a geographic restriction on the children's domicile. Second, he questions whether the trial court violated his rights "to help aid parental alienation." Third, he questions the trial court's awarding of a judgment against him for child support arrearage and further questions whether the court abused its discretion in applying an interest rate to said arrearage. Lastly, Father asserts the trial court abused its discretion in denying other requested relief.

As required, we construe Father's brief liberally; but, in doing so, we continue to hold him to the same standards as required of a licensed attorney—that is, to comply with applicable laws and rules of procedure. *Fox v. Wardy*, 318 S.W.3d 449, 453 (Tex. App.—El Paso 2010, pet. denied) (citing *Mansfield State Bank v. Cohn*, 537 S.W.2d 181, 184–85 (Tex. 1978)).

### A. Standard of Review

Most appealable issues in a family law case, including property division, conservatorship,

and child support, are reviewed under the abuse of discretion standard. *Martinez Jardon v. Pfister*, 593 S.W.3d 810, 819 (Tex. App.—El Paso 2019, no pet.); *see also Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982) (determination of best interest of child "will be reversed only when it appears from the record as a whole that the court has abused its discretion"); *In re J.M.M.*, 549 S.W.3d 293, 298–99 (Tex. App.—El Paso 2018, no pet.) (order granting child support is reviewed for abuse of discretion). An abuse of discretion occurs when the trial court "acts arbitrarily or unreasonably, without reference to any guiding principles, or when it fails to correctly analyze the law." *Interest of L.A.-K.*, 596 S.W.3d 387, 393 (Tex. App.—El Paso 2020, no pet.).

Also, in this context, we look to whether the trial court had sufficient information upon which to exercise its discretion and whether it erred in the application of its discretion. *In re M.V.*, 583 S.W.3d 354, 361 (Tex. App.—El Paso 2019, no pet.). Challenges to the legal and factual sufficiency of evidence are relevant factors in determining whether the trial court had sufficient information upon which to exercise its discretion, rather than as independent grounds of error. *Gerges v. Gerges*, 601 S.W.3d 46, 54 (Tex. App.—El Paso 2020, no pet.). Whether the trial court had legally sufficient evidence is determined by "view[ing] the evidence in the light favorable to the verdict, crediting favorable evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *City of Keller v. Wilson*, 168 S.W.3d 802, 807 (Tex. 2005). Whether the trial court had factually sufficient evidence is determined by considering and weighing all the evidence and we only set aside the finding if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. *Gerges*, 601 S.W.3d at 54. Because the trial court is in the best position to observe witnesses as well as their demeanor, we defer to such courts for resolution of conflicting evidence. *Id.*

**B. Primary Managing Conservatorship and Geographic Restriction**

Father's first issue essentially puts forth two complaints that we treat as individual sub-issues. First, he asserts the trial court abused its discretion in appointing Mother as the managing conservator with the exclusive right to designate the primary residence of the children. Second, he asserts the trial court abused its discretion in imposing no geographic restriction on the children's domicile.

### 1. Primary Conservatorship

In a suit for conservatorship, the primary consideration of the trial court is the best interest of the child. TEX. FAM. CODE ANN. § 153.002. The trial court may appoint either a sole managing conservator or joint managing conservators. *Id*. § 153.005. The code presumes the appointment of both parents as joint managing conservators is in the best interest of the child. *Id*. § 153.131(b). When appointing joint managing conservators, the trial court must designate one party as the conservator with the exclusive right to designate the child's primary place of residence. *Id*. § 153.134(b)(1).

In reviewing issues concerning the best interest of the child, courts are often guided by the non-exhaustive list of *Holley* factors, as follows:

> (A) the desires of the child; (B) the emotional and physical needs of the child now and in the future; (C) the emotional and physical danger to the child now and in the future; (D) the parental abilities of the individuals seeking custody (E) the programs available to assist these individuals to promote the best interest of the child; (F) the plans for the child by these individuals or by the agency seeking custody; (G) the stability of the home or proposed placement; (H) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (I) any excuse for the acts or omissions of the parent.

*Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).

The trial court determined the issues of conservatorship and the primary residence of the children after conducting a bench trial. The trial court appointed both parents as joint managing

conservators and appointed Mother as the conservator with the exclusive right to designate the primary residence of the children, without a geographic restriction imposed.

Father's first sub-issue of the first issue argues the trial court abused its discretion in appointing Mother as the primary conservator of the children. Specifically, Father argues there is evidence of Mother's "pattern of domestic violence, perjury, false reporting (repeatedly), parental alienation, withholding evidence, and contempt of Court." He also asserts Mother acted "maliciously" towards him in regard to communicating with him about the children. Father argues the trial court failed to consider all evidence in its ruling and therefore erred in denying his request to be named primary managing conservator.

In opposing, Mother argues the evidence at trial was legally and factually sufficient to reasonably conclude it was in the children's best interest that Mother be given the exclusive right to determine the children's primary residence.

### a. Evidence Father Claims was not Considered

In briefing, Father first asserts that evidence was presented that established Mother committed acts of domestic violence against Father. Father asserts Mother "struck [Father] with a close-hand fist across the face while holding the oldest child," and did so in front of Mother's two older children. We construe Father's briefing as contending the trial court failed to consider evidence of this alleged incident.

During the final hearing, Father testified the first incident of physical abuse occurred in November 2016 when Mother hit him. He acknowledged he did not take any photographs or document any injuries. Father also entered into evidence a transcript from a temporary orders hearing in January 2017—during the first filed divorce—claiming it included evidence of physical abuse. The transcript shows Father testified that "family violence by her hands on [him]," had

8

occurred but he did not otherwise elaborate or provide further details. At the same hearing, Mother responded to the alleged incident characterizing her actions differently. She testified she did not strike Father but instead made incidental contact when she reached for their daughter, M.L.W., from his lap. Mother described that Father grabbed M.L.W.'s leg when Mother attempted to pick her up, Mother let go, and her "hand . . . grazed his arm."

Father also argues that Mother conceded he had been the victim of physical abuse and Mother had perjured herself when she testified M.L.W. was not present but her two older sons were when abuse occurred.[6] Our review of the record, however, does not show that Father presented testimony as argued. During the hearing at issue, Father (representing himself) asked Mother *not* whether she had committed physical abuse against him but whether she was questioned by him about having committed physical abuse towards him. To the question she was asked, Mother responded, "yes." Father next asked whether he was the victim of the "allegation" and Mother responded "yes." Father also asked whether he was holding M.L.W. during the altercation. Mother responded "no." When asked whether her sons were present, she responded "yes." On review, the evidence showed the testimony of the incident was equivocal. The trial court was best able to resolve such conflicting testimony in favor of the judgment. *City of Keller*, 168 S.W.3d at 820; *Wheeling v. Wheeling*, 546 S.W.3d 216, 223 (Tex. App.—El Paso 2017, no pet.).

Father next points to police records to show he contacted police to report abuse by Mother; and Mother "attempted to file" an assault allegation against him. At trial, Mother offered police records into evidence to show she had been harassed by Father by him making repeated and

---

[6] In a civil proceeding, allegations of perjury are not properly before a trial court but must take place within the context of a criminal proceeding. *Draper v. Guernsey*, No. 03-16-00745-CV, 2017 WL 2224540, at *4 (Tex. App.—Austin May 18, 2017, pet. denied) (mem. op.) If anything, such a complaint asserting a party has committed perjury at trial may be construed on appeal as urging the testimony at issue should be disregarded. *See, e.g.*, *In re B.C.S.*, No. 10-06-00408-CV, 2007 WL 2005050, at *1 (Tex. App.—Waco July 11, 2007, no pet.) (mem. op.).

unnecessary calls to police without cause. The record does not show that Father testified or presented the argument to the trial court that he makes to this Court. The police report Father points to shows the "nature of incident" was listed as "assault/sexual assault" but no additional comments or details were taken. During the final hearing, Mother denied having filed an assault report against Father.

Father also refers to testimony by Father's previous company commander and a C.P.S. investigator to show a C.P.S. investigation was "ruled out." However, the testimony father points to on appeal was presented at a temporary orders hearing held on September 19, 2017, not during the final hearing. Testimony from a temporary orders hearing is not before us and cannot be considered on review of the trial court's final order. *See Moreno v. Perez*, 363 S.W.3d 725, 735–36 (Tex. App.—Houston [1st Dist.] 2011, no pet.).

Lastly, Father's brief also asserts there was family violence committed against him by Mother's eldest son, D.W. Father alleges D.W. "physically assaulted" him and Mother was "unable to get control of her son." At trial, Father testified that on May 9, 2018, D.W., who was then seventeen years old, shoved Father with his shoulder and left hand while M.L.W. was in Father's arms. Father testified he felt threatened at the time, stood his ground, set down his daughter, and asked Mother to intervene. Mother testified Father had arrived at her residence to pick up F.T.G.W. While recording, D.W. followed her outside because he was not comfortable with Father being around Mother. Mother testified she only heard Father tell her that D.W. had pushed Father but did not see anything. Mother did state the argument between D.W. and Father began when Father threatened to strike D.W.

In addition to the parties, Willie J. White, Jr., D.W.'s biological father, also provided testimony about the incident. White testified he saw a video that caused him concern regarding

Father. Due to his concern, he sent the video to C.P.S. to initiate an investigation on Father.[7] Mother's neighbor, Marcus Dancy, also testified that he witnessed part of the incident. Dancy testified that he was in his home when D.J.W. rang the doorbell and asked him to call the police. Dancy could hear yelling and saw Mother, Father, and D.W. in a heated argument. He feared Mother and D.W.'s lives were in danger and intervened. When he asked what was going on, Father stated D.W. had put his hands on him, but Dancy stated he saw "no physical scars" on him. After the incident was reported to C.P.S., the department returned an initial finding of reason to believe negligent supervision by Father. After Father appealed the decision, however, the finding was reversed to "ruled out."

From our review of the record, Father fails to develop any substantive argument or provide specific authority demonstrating how the trial court abused its discretion in failing to consider all evidence presented. Father simply cites to section 153.013 of the Texas Family Code, which states: "[i]f a party to a pending suit affecting the parent-child relationship makes a report alleging child abuse by another party to the suit that the reporting party knows lacks a factual foundation, the court shall deem the report to be a knowingly false report" and "[e]vidence of a false report of child abuse is admissible in a suit between the involved parties regarding the terms of conservatorship of a child." TEX. FAM. CODE ANN. § 153.013. We note that Father never pleaded false allegations or reporting in any of his pleadings as a basis for appointing him as the primary conservator of the children.

On review, we must presume the trial court resolved conflicting evidence in favor of the prevailing party and discredited all conflicting evidence. *City of Keller*, 168 S.W.3d at 820–21.

---

[7] Father complains that White's testimony was based on "hearsay" because he was not physically present. However, Father's complaint on appeal is not preserved as no objection was lodged at trial at the time of White's testimony and, thus, it cannot be raised for the first time on appeal. TEX. R. APP. P. 33.1(a)(1).

Without more presented by Father, we cannot say the trial court did not consider all the evidence, but instead, made credibility determinations and inferences in favor of the judgment. *Id.* at 819.

### b. Other Evidence

We further note that Father ignores or fails to account for additional evidence the trial court could have considered in making its determination. First, Father admitted to having been banned from the daycare at Fort Hood where the parties' two children were enrolled because of his "disturbing behavior." Additionally, Mother testified she felt constantly harassed by Father. Mother also testified Father had requested Mother terminate her pregnancy when she was pregnant with M.L.W. because "it was not good timing" for their careers. Father denied he had made the request but testified they mutually decided to go through with her pregnancy. Mother also testified Father had repeated the same request when she was pregnant with F.T.G.W. because "who would want to bring a child into a marriage that's in shambles." Father also denied making this request. Mother also testified Father denied paternity of F.T.G.W. until a paternity test was completed.

Most notably, Mother testified she had been the primary caregiver of M.L.W. and F.T.G.W. for the entirety of their lives. When M.L.W. was born, she lived with Mother who was stationed in Oklahoma before moving to Killeen, Texas. Father was then stationed and living in Kansas. Mother and Father visited each other on holiday weekends but otherwise lived apart. Father did not physically move in with Mother and M.L.W. until May 2017. Father lived with Mother and M.L.W. for only about six weeks before he then filed his second petition for divorce in July 2017.

Father followed a "3/2/2" schedule with M.L.W. but had inconsistent visitation with F.T.G.W. Father testified his visitation with F.T.G.W. would be at the convenience of Mother. There were some instances where Father would have F.T.G.W. for two hours, four hours, or sometimes supervised. Father testified he and Mother had discussions about getting F.T.G.W.'s

12

ears pierced at the mall and Mother cancelled on four occasions. In September 2018, Father proceeded to have F.T.G.W.'s ears pierced when Mother did not show up to the mall. Father testified he had not had visitation with F.T.G.W. since this incident.

In addition to Mother being the primary caregiver of the children, Father testified that Mother was a "good mother," and her home was an acceptable home for the children. Father did not present any evidence that Mother abused or neglected any of her children. Neither did he present evidence that Mother abused alcohol or drugs. Father did allude to Mother having a "temper" but provided no evidence supporting his assertion. In support of his request to be named the primary conservator, Father testified he was the "better choice" because he had a more flexible work schedule than Mother and that his cousin lived nearby who would help with childcare.

Considering all evidence in its totality, we cannot say the trial court abused its discretion in deciding it was in the children's best interest to grant Mother the exclusive right to designate the primary residence of the children, as the trial court was in the best position to observe the parties and witnesses. *Interest of L.A.-K.*, 596 S.W.3d at 400; *see also In re T.M.P.*, 417 S.W.3d 557, 566 (Tex. App.—El Paso 2013, no pet.) ("The trial court was in the best position to observe the demeanor and personalities of the witnesses and could feel the forces, powers, and influences that cannot be discerned by merely reading the record."). Because the trial court's decision is supported by evidence of a substantive and probative character, we cannot say the court abused its discretion. *See Interest of L.A.-K.*, 596 S.W.3d at 400.

Father's first sub-issue of the first issue is overruled.

### 2. Geographic Restriction

In his second sub-issue of the first issue, Father argues the trial court erred in awarding Mother the exclusive right to designate the children's primary residence without restriction on

13

geographic location. Father complains the trial court based its ruling solely on Mother receiving military orders to relocate. Father asserts Mother did not provide reasons related to the best interest of the children in support of her request to relocate out of state.

In designating a primary conservator, the trial court must also "establish . . . a geographic area within which the conservator shall maintain the child's primary residence" or "specify that the conservator may determine the child's primary residence without regard to geographic location." TEX. FAM. CODE ANN. § 153.134(b)(1). Although the trial court has wide latitude in determining what is in the best interest of a child, the Family Code is silent as to specific factors in determining whether a geographic restriction on residency is in the best interest of a child. *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982); *Yasin v. Yasin*, No. 03-10-00774-CV, 2011 WL 5009895, at *3 (Tex. App.—Austin Oct. 21, 2011, no pet.) (mem. op.). The public policy of Texas is to "assure that children will have frequent and continuing contact with parents who have shown the ability to act in" the child's best interest; to "provide a safe, stable, and nonviolent environment" for the children; and to "encourage parents to share in the rights and duties of raising their child" after dissolution of their marriage. *See* TEX. FAM. CODE ANN. § 153.001(a)(1)-(3). The Texas Supreme Court has provided guidance in applying the state's best interest standard in determining whether a domicile restriction is in the best interest of the child including: "(1) reasons for and against the move, (2) education, health, and leisure opportunities afforded by the move, (3) accommodation of the child's special needs or talents, (4) effect of extended family relationships, (5) effect on visitation and communication with the noncustodial parent, (6) noncustodial parent's ability to relocate, and (7) the child's age." *In re K.L.W.*, 301 S.W.3d 423, 425–26 (Tex. App.—Dallas 2009, no pet.) (citing *Lenz v. Lenz*, 79 S.W.3d 10, 15–17 (Tex. 2002)). Courts may also consider the general *Holley* factors relevant to the best interest of the child

14

determination. *In re K.L.W.*, 301 S.W.3d at 426 (citing *Holley*, 544 S.W.2d at 371–72)).

Nearing the end of the second hearing set on the parties' final hearing, Mother made a motion for temporary orders requesting permission to move with the children to Maryland, due to a change in her duty station. Father responded without objection or argument but merely requested visitation and access to F.T.G.W. The trial court orally rendered an interim order awarding Father a standard possession order with M.L.W., and a visitation schedule for F.T.G.W., with both provisions addressing the remainder of the summer. The trial court's order also lifted the geographic restriction on the children's residence thereby permitting Mother to leave Bell County.

Father's main assertion on appeal contests the trial court's award of temporary orders at the end of one of the hearings. Father asserts Mother failed to file a motion and he had no knowledge of her request to relocate before it was made in court. Father argues the trial court imposed no geographic restriction "solely due to [Mother] alleging that she recently received 'military' orders to relocate," and not based on the best interest of the children. Father lodged no objection at the hearing and only requested access to his younger daughter, which he was awarded. Father's brief fails to assert a clear argument as to how the trial court abused its discretion in not imposing a geographic restriction and does not guide us to any authority to support his complaint. TEX. R. APP. P. 38.1(i).

Even so, we find there was sufficient evidence to support the trial court's decision permitting relocation without imposing a geographic restriction on the primary residence of the children. In addition to hearing evidence that Mother had acted as primary caretaker of the children since their birth, the trial court also heard evidence that her relocation was required to further her career with the military. Both Mother and Father were members of the military, and both had moved multiple times in the past for their employment. Mother testified it was necessary for her

15

to accept relocation orders to continue her employment. Kandice Delora Reyes, Mother's company commander, also testified that a service member could not refuse a move to a new duty station when so ordered. A parent's need to secure employment or pursue educational or career opportunities is relevant for the trial court to consider in exercising its discretion regarding geographical restrictions. *Lenz*, 79 S.W.3d at 16.

No evidence was presented showing the children would be harmed by the requested relocation. Father testified his cousin and sister lived near Bell County, but there was no evidence presented establishing that the children had developed a close relationship with Father's relatives. Father presented no evidence showing how a geographic restriction to Bell County would serve the children's best interest. Lastly, at trial, Father only requested the children's residence be restricted to the United States.

The trial court could reasonably conclude that permitting Mother to designate the children's residence without regard to geographic restriction was in the children's best interest. *Lenz*, 79 S.W.3d at 16; *Interest of K.L.W*., 301 S.W.3d at 428. We conclude there was sufficient evidence to support the trial court's finding.

We overrule Father's second sub-issue of his first issue. Having overruled both sub-issues, we overrule Father's first issue in its entirety.

## C. Alienation of Parental Rights

Father's second issue asserts the trial court erred and abused its discretion or otherwise "violated [his] parental rights to help aid parental alienation." Father does not set forth any argument supported by authority to establish how the trial court erred. Instead, Father recites instances where he believes his parental rights were violated.

An appellant's complaint "must address specific errors and not merely attack the trial

16

court's order in general terms." *Woodside v. Woodside*, 154 S.W.3d 688, 690 (Tex. App.—El Paso 2004, no pet.). An appellant's brief must also contain clear and concise argument with citations to authorities. TEX. R. APP. P 38.1(i). Even after construing Father's brief liberally, we conclude Father failed to present a cognizable issue for our review.

We overrule Father's second issue.

### D. The Child Support Arrearage and Interest Rate

Father's third issue asserts the trial court erred in awarding judgment against him for a child support arrearage in the amount of $31,460. Father also asserts the trial court erred in setting the interest rate on the judgment after issuance of the final ruling.

#### 1. Amount of the Child Support Arrearage

Father's first sub-issue of the third issue contends the trial court lacked sufficient evidence, and abused its discretion, in determining the amount of child support arrears, which it ordered against him, in the amount of $31,460, for the period of March 2018 through December 2019. Specifically, Father asserts (1) a prior agreed support determination was terminated by the court, (2) the court should have credited his payments for M.L.W.'s daycare expenses and other support provided in the form of packages, (3) the trial court should have credited his military basic housing allowance as child support, and (4) the trial court did not allow him to respond to Mother's closing arguments nor allow him to submit certain evidence.

The parties entered agreed temporary orders through a Rule 11 agreement in September 2017, where it was agreed that Father would pay child support to Mother in the amount of $1,430 per month beginning October 1, 2017. The monthly payment would be made to his attorney who would then forward it to Mother's attorney. The Rule 11 agreement, which was filed, was signed by the parties, their attorneys, and the trial court. At trial, Mother testified Father initially paid

17

$1,430 each month through February 2018, but no payments thereafter. Father does not contend he made any additional payments of $1,430 beyond those identified by Mother. Instead, Father raises two grounds of complaint. First, he asserts he provided support in other ways. Second, he asserts the Rule 11 agreement was terminated on February 7, 2018, by a subsequent order that ordered no payment of child support by either party, and such order remained in effect through June 19, 2019. Father points to the trial court's docket sheet in the clerk's record which does show an entry dated February 7, 2018, stating "no present CS from either to either." Father asserts the trial court abused its discretion when its findings were contradictory to prior temporary orders and to the parties' testimony during trial. Father also asserts the trial court erred in not giving effect to court orders purportedly on file.

Pursuant to Rule 11 of the Texas Rules of Civil Procedure, an agreement between parties touching a pending suit will be enforced when in writing, signed, and filed as part of the record. *See* TEX. R. CIV. P. 11. Of note, a party reserves the right to revoke its consent to a Rule 11 agreement at any time before the rendition of judgment by effectively communicating withdrawal of consent to the trial court. *In re Caballero*, 441 S.W.3d 562, 573 (Tex. App.—El Paso 2014, no pet.). Here, Father does not assert he revoked his consent to the Rule 11 agreement, nor is there evidence of record establishing that Father took steps to withdraw his consent at any point during the pendency of the proceeding.

Rather, Father asserts a subsequent order terminated the agreed order of September 2017. Despite Father's argument, our record lacks any subsequent order purportedly arising from a hearing held on February 7, 2018, and no transcript otherwise shows rendition of a ruling. We do acknowledge the existence of the docket-sheet pointed out by Father, but the record further shows that such evidence was not offered into evidence during the subsequent trial of the issue. Even so,

18

a docket-sheet entry does not form a part of the record that may be considered on appeal, but instead, is a memorandum made for the trial court and clerk's convenience. *Barnes v. Deadrick*, 464 S.W.3d 48, 53 (Tex. App.—Houston [1st Dist.] 2015, no pet.) (citing *In re Bill Heard Chevrolet, Ltd.*, 209 S.W.3d 311, 315 (Tex. App.—Houston [1st Dist] 2006) (orig. proceeding)). Due to its lack of reliability, a docket-sheet entry is generally considered insufficient to constitute a judgment or decree of the court. *Id*. For this reason, a docket-sheet entry cannot contradict, overrule, or take the place of a written order or judgment. *Kalyanaram v. Burck*, 225 S.W.3d 291, 303 (Tex. App.—El Paso 2006, no pet.).

We further note from our record that, during the second setting of the final hearing, Father's counsel advised the transferee court that "we had a hearing[,] and we never got a ruling from Judge Gauntt." Therefore, without a showing of the trial court rendering a subsequent order that would supersede the agreed order, we cannot find that the trial court lacked sufficient evidence or otherwise abused its discretion in awarding child support arrears based on the agreed order. Father agreed he would pay a monthly amount of $1,430 to Mother, as agreed child support, beginning October 1, 2017, and each month thereafter. The record established that no payments were made from March 2018 through December 2019, a period of twenty-two months. Multiplying those months by the agreed monthly amount of $1,430 equals the trial court's arrearage award of $31,460. It follows that the trial court had sufficient evidence upon which to base its ruling and did so reasonably. *See* TEX. FAM. CODE ANN. § 154.124(b) ("If the court finds that the agreement is in the child's best interest, the court shall render an order in accordance with the agreement.").

Father's remaining arguments assert the trial court failed to give him credit for actual support in its calculation of the amount of child support arrearage. In its findings of fact and conclusions of law, the trial court awarded child support arrearage in the amount of $31,460 for

19

the period of March 2018 through December 2019, and that such award was in the children's best interest. Father asserts the trial court failed to apply certain credits against the award for support he provided from the beginning of the proceedings. The trial court can award certain offsets and credits but has no discretion to forgive or decrease a past child-support obligation. *In re A.L.S.*, 338 S.W.3d 59, 65–66 (Tex. App.—Houston [14th Dist.] 2011, pet. denied). The trial court's child support calculations must be based on the payment evidence presented, not on the trial court's own assessment of what is fair and reasonable. *Id*. at 66.

Father asserts that Mother received his military basic allowance for housing (BAH) from March 2018 through December 2019, totaling $9,423. He also argues he paid "100 percent of childcare expenses" from March 2018 through July 2019, totaling $9,810. Lastly, Father argues he provided "support items" totaling $15,828.37, for the time between March 2018 and December 2019, and shipping costs of items totaling $1,058.88, incurred between September 2018 through December 2019. The evidence Father points to and relies on for his credits were not offered into evidence during trial. Father's brief cites to multiple exhibits attached to motions filed after entry of the final decree. None of the exhibits, however, were ever admitted into evidence or considered by the court. Because such evidence was not presented to the trial court, the records may not be considered on appeal. *Interest of S.W.*, 614 S.W.3d 311, 315 (Tex. App.—Fort Worth 2020, no pet.).

Father argues that he had provided financial support for the children following his filing of a petition for divorce. But Father acknowledges he did not make any monthly payments of $1,430 to Mother after February 2018. Regarding F.T.G.W., Father testified he would provide whatever essentials she needed and other "support items." Father did introduce a transaction history and receipts showing shipping costs and purchases from different stores. The exhibits consisted of

20

nearly forty pages which were simply offered and admitted into evidence. No testimony was elicited from Mother or presented by Father to show the exhibits demonstrated his payment of monthly child support in the agreed amount of $1,430. Father failed to provide sufficient payment evidence for a credit or offset for any of the missed payments after February 2018. *See In re A.L.S.*, 338 S.W.3d at 66 (finding no abuse of discretion where some evidence supported the amount of confirmed arrearages when there was conflicting child-support payment evidence). Based on this record, we cannot say the trial court abused its discretion by not awarding credits and offsets to the arrearage calculation.

Lastly, Father asserts the trial court denied him a final rebuttal argument during closing arguments, as well as an opportunity to submit child support evidence in response to Mother's closing argument. At the conclusion of trial, the trial court gave both Father and Mother an opportunity to present a closing argument. The trial court gave each side three minutes for closing argument; if more time was desired, the court would permit either to submit further information. Father presents no authority or clear argument to show how the trial court erred in not giving him the opportunity to present a rebuttal response.

Father has failed to show the trial court abused its discretion in its judgment. Accordingly, we overrule sub-issue one of the third issue.

### 2. Interest Rate

We next consider the interest rate applied to the child support arrearage entered in the Final Decree of Divorce. Father complains the interest rate assessed against the judgment amounts to an abuse of discretion.

The Texas Family Code establishes that interest accrues on a money judgment for retroactive or lump-sum child support at the annual rate of 6% simple interest from the date the

order is rendered until the judgment is paid. TEX. FAM. CODE ANN. § 157.265(c). Here, the trial court instead applied a rate of 12% per year. Mother readily concedes the interest rate imposed should be 6%, not 12%, and the Final Decree of Divorce should be amended accordingly. We agree the interest rate should have been set at 6% per annum. *Id.*; *see also In Interest of J.R.G.*, 499 S.W.3d 922, 929 (Tex. App.—El Paso 2016, no pet.) (finding the trial court was incorrect in the percentage applied to the confirmed arrearage and remanded the case to the trial court); *In Interest of S.H.*, No. 05-17-00336-CV, 2018 WL 3751297, at *5 (Tex. App.—Dallas Aug. 8, 2018, no pet.) (mem. op.) (remanding the case to the trial court to recalculate the proper interest rate applied to child support arrearage).

We overrule in part and sustain in part Father's third issue. The first sub-issue of Father's third issue is overruled. We sustain his second sub-issue as to the interest rate applied to the judgment for child support arrearage.

### E. Other Requested Relief

Father's fourth and final issue asserts the trial court abused its discretion in denying his other requested relief. Father asserts he believes such requests would "aid in maintaining a consistent, healthy and prosperous relationship with the children." Responding, Mother contends Father's fourth issue should be overruled as multifarious and inadequately briefed.

Appellate courts may disregard points of error that are multifarious. *Quiroz v. Gray*, 441 S.W.3d 588, 591 (Tex. App.—El Paso 2014, no pet.). Multifarious issues bring forth combined complaints based on more than one legal theory within a single issue. *Id*. We may consider multifarious issues when we can determine, with reasonable certainty, the alleged error about which the complaint is made. *Id*.

Here, Father lists seven different requests not granted by the trial court. Although Father

22

does assert specific complaints as to the requested relief, he otherwise fails to assert a specific complaint as to what error the trial court made in denying such relief. *Woodside*, 154 S.W.3d at 690. Father fails to guide us to any authority to show the trial court abused its discretion. TEX. R. APP. P 38.1(i). Without such guidance or assignment of error, we find there is no error for us to review.

Father's fourth issue is overruled.

### III. CONCLUSION

In conclusion, we overrule Father's first, second, and fourth issues. As to Father's third issue, we overrule in part and sustain in part. Having reached such conclusions, we affirm in part and reverse and remand in part the trial court's order. We affirm the trial court's order on all issues not related to the interest rate set on the judgment against Father for child support arrearage owed to Mother. As to that remaining part, we reverse the trial court's order that 12% interest accrued on the judgment for child support arrearage. As to this part of the order, we remand the cause to the trial court for consideration of the amount of interest to be included in the judgment consistent with the terms of this decision.

GINA M. PALAFOX, Justice

December 29, 2021

Before Rodriguez, C.J., Palafox, and Alley, JJ.

23